**Claude L. DALLAS, Jr., Petitioner–Appellant,**

v.

**Arvon ARAVE, Respondent–Appellee.**

**No. 91–36316.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 3, 1992.

Decided Jan. 20, 1993.

David Z. Nevin, Seininger, Nevin, Kofoed & Herzfeld, Boise, ID, for petitioner-appellant.

Lynn E. Thomas, Deputy Atty. Gen., Boise, ID, for respondent-appellee.

Before WRIGHT, HUG, and POOLE, Circuit Judges.

HUG, Circuit Judge:

Claude Dallas, who was convicted of killing two Idaho game wardens, appeals the district court's denial of his petition for a writ of habeas corpus. His claims, challenging his conviction and sentence, are based upon the faulty premises that each of the jury's verdicts must be consistent with the other verdicts, and that the sentence must be based upon the jury's factual findings. We affirm the order of the district court.

## I.

The essential facts have been recited by the Idaho Supreme Court in *State v. Dallas*, 109 Idaho 670, 710 P.2d 580 (1985). In short, Claude Dallas lived in a campsite in Owyhee County, Idaho, and subsisted by trapping, in and out of season. William H. Pogue and Wilson Conley Elms, Idaho Fish and Game Department officers, confronted him on January 5, 1981, while Dallas and his friend, Jim Stevens, were carrying supplies to the campsite. The officers followed Dallas to his camp and took from him a pistol that he was wearing. They accused Dallas of taking game out of season.

According to Stevens's trial testimony, Dallas quickly drew a .357 pistol that was strapped to his leg, shot Pogue twice, shot Elms twice, and then shot Pogue twice more. He then dashed to his tent, retrieved a rifle, and shot both Pogue and Elms in the backs of their heads. Stevens helped Dallas remove the bodies; Elms's body was dumped into a nearby river, and Pogue's body was taken to Nevada where Dallas buried it.

Dallas was eventually caught by the FBI and tried in Idaho state court. He was charged with two counts of first degree murder, use of a firearm in the commission of a felony, resisting officers in the lawful performance of their duties, and destruction or concealment of evidence.

At trial, the jury was instructed on two theories of first degree murder, and on the lesser included offenses of second degree murder and voluntary manslaughter. The first degree murder theories were (1) the willful, deliberate and premeditated killing of a human being, with malice aforethought, as described in Idaho Code § 18–4003(a); and (2) the willful, deliberate murder, with malice aforethought, of a peace officer who was acting in the lawful discharge of an official duty, and was known or should have been known by the defendant to be an officer so acting, as described in Idaho Code § 18–4003(b).

The second degree murder instruction concerned "the unlawful killing of a human being with malice aforethought when there is manifested an intention unlawfully to kill a human being but the evidence is insufficient to establish deliberation and premeditation," pursuant to Idaho Code § 18–4003(g).

Dallas was convicted on two counts of voluntary manslaughter, which is defined as the unlawful killing of a human being, without malice, upon a sudden quarrel or heat of passion. Idaho Code § 18–4006(1). The jury was instructed that:

> To reduce an intentional homicide from the offense of murder to manslaughter upon the ground of sudden quarrel or heat of passion, the provocation must be of such character and degree as naturally would excite and arouse such passion, and the defendant must have acted under the smart of that sudden quarrel or heat of passion.... [I]f sufficient time elapsed between the provocation and the fatal blow for passion to subside and reason to return ... the mere fact of slight or remote provocation will not reduce the offense to manslaughter.

In addition to the voluntary manslaughter counts, he was convicted on the firearms counts, but acquitted on the resisting peace officers charges.

The court sentenced him to an indeterminate 10–year term on each of the manslaughter counts, to run consecutively. It enhanced the sentence by another 10–year consecutive term for the use of a firearm and also sentenced him to six months in the county jail on the concealment conviction.

On direct appeal, Dallas challenged the sentence, the sufficiency of the evidence, and several other matters. The Idaho Supreme Court affirmed the convictions and the sentence. *Dallas,* 710 P.2d at 592.

In his petition for a writ of habeas corpus, Dallas challenged the sufficiency of the evidence for the voluntary manslaughter convictions and his sentence. The district court denied his application on the merits, finding that he had exhausted his claims in state court. Dallas appeals.

## II.

Dallas's appeal is based upon his argument that the jury found that he had acted initially in self-defense. He contends that this finding is a necessary inference from the jury's verdict acquitting him of first degree murder, and he wishes to supplement the record to make this clear.

Because the jury acquitted him of first degree murder, he argues that the jury found that he had acted in self-defense when he initially shot Pogue and Elms. From this, he reasons that the conviction of manslaughter had to have been based on the second round of shots. He then argues that there was insufficient evidence to support the voluntary manslaughter convictions because the State did not prove beyond a reasonable doubt that the victims were alive when he fired the second set of shots.

The Idaho Supreme Court rejected Dallas's argument, holding that there was "no factual or legal basis for separating [the general] verdict into self-defense and non-self-defense segments." *Dallas,* 710 P.2d at 588. We agree.

■ First, we conclude that there was sufficient evidence to support the verdict of voluntary manslaughter. The sufficiency of the evidence is examined by asking "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979) (original emphasis). We review *de novo* the district court's application of this standard. *Thomas v. Brewer,* 923 F.2d 1361, 1364 (9th Cir.1991).

To convict Dallas of voluntary manslaughter, the jury was required to find the unlawful killing of a human being without malice and upon a sudden quarrel or heat of passion. Idaho Code § 18–4006(1). We do not attempt to ascertain what the jury actually determined. A rational trier of fact could have found Dallas guilty of voluntary manslaughter beyond a reasonable doubt by relying on Stevens's trial testimony, confirming a confrontation between Dallas and the wardens, and on Dallas's own testimony that he had shot them.

■ The fact that the various jury verdicts could be interpreted in ways that could be inconsistent is not a justification for setting aside the verdicts. "Consistency in the verdict is not necessary." *Dunn v. United States,* 284 U.S. 390, 393, 52 S.Ct. 189, 190, 76 L.Ed. 356 (1932). To examine inconsistent jury verdicts would require either "pure speculation" or "inquiries into the jury's deliberations" that we decline to undertake. *See United States v. Powell,* 469 U.S. 57, 66, 105 S.Ct. 471, 477, 83 L.Ed.2d 461 (1984).

■ Furthermore, Dallas does not present a compelling case. The verdicts were not inconsistent. The jury could have found simply that the first round of shots was executed without malice, and as a result of the heat of passion aroused in Dallas by his quarrel with the game wardens, but not in self-defense. These facts would support the acquittal of Dallas on the first and second degree murder charges, and the

convictions on the voluntary manslaughter charges.

Or, the jury could have found that the first shots were fired in self-defense, but that the second round of shots was fired as a result of the heat of passion, when there was no longer any threat to Dallas's life. Significant evidence was presented at trial to show that the victims were still alive when the second shots were fired. Elms's body was recovered and examined prior to trial, and the state's expert testified that "in his opinion Conley Elms was alive when he was shot in the head." Although Pogue's body was not located prior to trial, Stevens testified that he observed blood flowing from Pogue's head wound, which was inflicted by Dallas's rifle shots. The state's expert testified that the blood flow indicated cranial activity, which indicated that Pogue was alive when the rifle shots were fired.

█ Because the sufficiency of the evidence claims are clearly resolved from the record of the state court proceedings, Dallas's motion for discovery, attempt to supplement the record, and request for an evidentiary hearing were properly denied by the district court. Dallas sought to supplement the record with sworn statements and testimony from members of the trial jury, in order to show that they had found that he had acted initially in self-defense. Such evidence is precluded also by the rule that jurors may not impeach their own verdict. *See McDonald v. Pless,* 238 U.S. 264, 35 S.Ct. 783, 59 L.Ed. 1300 (1915). Dallas failed to show that the state court had not provided a full and fair hearing. Based upon the reliable and relevant facts found by that court, we agree that no evidentiary hearing is warranted. *See Townsend v. Sain,* 372 U.S. 293, 312–13, 83 S.Ct. 745, 756–57, 9 L.Ed.2d 770 (1963), *overruled in part on other grounds, Keeney v. Tamayo–Reyes,* — U.S. ——, 112 S.Ct. 1715, 118 L.Ed.2d 318 (1992); *Greyson v. Kellam,* 937 F.2d 1409, 1415 (9th Cir.1991).

### III.

Dallas claims that his due process rights were violated because his sentence was determined in an illegal and arbitrary manner. He argues that the sentencing judge based the sentence on factual findings that were inconsistent with the verdict. Again, the factual and legal bases of Dallas's argument are faulty: the sentence is not inconsistent with the facts supporting the verdict, and the sentence need not be confined to the facts essential to the verdict. Dallas's sentence was consistent with that authorized by the Idaho statute for voluntary manslaughter. The essence of his complaint is that the sentencing judge's exercise of discretion, in imposing the maximum sentence, violated his due process rights.

█ First, a sentencing judge may consider evidence other than that considered by the jury at trial. The Due Process Clause does not restrict the view of the sentencing judge to the information received in open court. *Williams v. New York,* 337 U.S. 241, 252, 69 S.Ct. 1079, 1086, 93 L.Ed. 1337 (1949). Nor does it prevent the sentencing court from taking its own view of the evidence presented in open court. *See United States v. Grayson,* 438 U.S. 41, 53–54, 98 S.Ct. 2610, 2617, 57 L.Ed.2d 582 (1978). A sentencing judge is also free to determine whether the defendant's testimony contained willful and material falsehoods and consider such falsehoods "for whatever light [they] may shed on the sentencing decision." *Id.* at 53, 98 S.Ct. at 2617.

█ The sentence imposed and the factual findings made by the sentencing judge are not inconsistent with the verdict. He stated that the officers were acting within the scope of their duties, that Dallas had not acted in self-defense, and that Dallas had "almost premeditat[ed]" the killings.

Whether the officers were acting within the scope of their duties need not have been determined by the jury. As discussed above, Dallas's acquittal on the first degree murder charge may have been based on the lack of a finding of malice. The acquittal on the charge of knowingly resisting a peace officer, pursuant to Idaho Code

§ 18–2703, may have been based on a finding that Dallas was not acting knowingly, or had acted initially in self-defense. These actions could have occurred simultaneously with the officers acting within the scope of their authority; hence, the jury need not have made a determination as to the officers' actions.

The judge stated that he did not believe Dallas's testimony that he had acted in self-defense. The verdict did not require a finding of self-defense. The judge also noted that Dallas's actions "were motivated by [his] desire to insure [his] own freedom" rather than by a desire to defend himself. Stevens testified that Dallas said, "I would have took 'em on the rim but they would have killed me up there." The judge found that this actually raised Dallas's degree of culpability, as Dallas had *"almost* premeditat[ed]" the killings. The judge did not find that Dallas had premeditated the killings, and thus did not contradict the jury's verdict on the first degree murder charges.

### IV.

Dallas contends that the judge improperly relied upon the fact that Dallas had not identified the location of Pogue's body until several weeks into the trial. Dallas argues that use of this information punished him for refusing to testify against his own interests, in violation of his Fifth and Fourteenth Amendment rights.

■ A criminal defendant is obliged to assist the authorities "[u]nless his silence is protected by the privilege against self-incrimination." *Roberts v. United States,* 445 U.S. 552, 558, 100 S.Ct. 1358, 1363, 63 L.Ed.2d 622 (1980). The privilege must be invoked in a timely fashion, unless the Government has substantial reason to believe that the requested disclosure is likely to be incriminating. *See id.* at 559, 100 S.Ct. at 1363–64. Dallas did not invoke the Fifth Amendment privilege until he raised it on appeal.

■ The sentencing court referred to Dallas's failure to identify the location of the body, but that was not the sole basis upon which it concluded that Dallas felt no remorse for the killings. The court noted "the showing of no remorse by the type of statements that [Dallas] made and by the way [Dallas] handled the bodies themselves." The court stated that "any reasonable person would not have gone forward with that type of abuse to [Elms's] body." Dallas had dragged Elms's body feet first and face down before dropping the body in the river. Dallas had buried Pogue's body in a shallow grave. Finally, the court stated, "Worse than that is the time period we are talking about before you revealed the whereabouts of [Pogue's] body," and said that Dallas could have let someone know the location of the grave once he was "free or had been removed from the scene and had not been discovered."

Apparently the court was suggesting that Dallas could have made known the location of the body even before he was apprehended by the FBI, in a way that would not have incriminated him. We conclude that Dallas's sentence, within the statutory maximum, was not based on Dallas's refusal to testify against his own interests.

### V.

Whether the sentence exceeds the minimum necessary to achieve the four sentencing objectives established by the Idaho Supreme Court is a state law claim that has been resolved by that court. *See Dallas,* 710 P.2d at 584–85.

### VI.

The State argues that Dallas did not present a constitutional claim concerning his sentence in the state courts and has procedurally defaulted. We affirm the district court's finding that although the state court had not ruled on the constitutional claims, the due process arguments concerning his sentence were argued in Dallas's appellate brief to the Idaho Supreme Court.

The judgment of the district court is AFFIRMED.