**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Phillip FAIRCHILD, Defendant–Appellant.**

**No. 92–10313.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Feb. 4, 1993.

Decided April 8, 1993.

Harry L. Hellerstein, Asst. Federal Public Defender, San Francisco, CA, for defendant-appellant.

Charles B. Burch, Asst. U.S. Atty., San Francisco, CA, for plaintiff-appellee.

Before: FLETCHER, REINHARDT and NOONAN, Circuit Judges.

NOONAN, Circuit Judge:

Phillip Fairchild appeals his conviction of causing false statements to be made to the General Services Administration (GSA) in violation of 18 U.S.C. §§ 1001 and 2. We affirm.

## FACTS

In August 1986 So–Cal Plastics, Inc. (So–Cal) entered into a contract with the GSA to provide plastic bags. Fairchild was president of So–Cal and signed the contract, which specified the thickness of the bags, the number of bags per box and the kind of box to be used. The contract also called for certification that each shipment complied with the contract pursuant to the Quality Approved Manufacturer Agreement (QAMA) program which permitted the supplier to get prompt payment and reduced cost to the government by waiving government inspection of every shipment.

After getting the contract, Fairchild requested modifications as to the number of bags per box and the kind of bags to be used. GSA refused the request. The first two sets of pre-production samples of the bags failed the GSA tests. Fairchild then gave directions to make passable samples—directions which increased the thickness of the bags. The third set of pre-production samples was accepted by GSA.

On October 27, 1986, So–Cal received its first specific purchase order under the contract for bags, which were then made, boxed and shipped by November 25, 1986. Subsequent shipments continued into January 1987 when a GSA contract officer, Paul Swanson, inspected the boxes at GSA's Stockton warehouse and discovered that each box shipped by So–Cal contained substantially fewer than the required and certified number of bags.

Throughout the manufacture of the GSA bags, the plant manager, Olympus Haines, and the production workers received production orders from Fairchild. During the first week of producing the bags, Ademar Quiros, a department supervisor who oversaw the production line, noticed that the box labels overstated the actual number of bags in the boxes. He asked Fairchild why there was the lower number of bags. Fairchild told him "to continue to run it that way and do it by weight." According to Quiros, "[W]e had to run heavy bags and put less bags in a case."

With each shipment of a box, a QAMA certificate had to be completed that stated, "I certify that the shipment of items listed below and consigned to GSA [location] was inspected and found to comply with all requirements of the contract." Some time before the first shipment was made in November 1986 Fairchild refused to sign the QAMAs. John Morrison, an owner of the company, then ordered the shipping manager, William Kagel, to sign the certificates. Kagel did so. Fairchild continued to order plant employees to produce bags that could not meet the specifications of the contract and to pack the boxes by weight, resulting in shortages.

## PROCEEDINGS

Fairchild was indicted on one count of conspiracy with So–Cal to defraud the GSA by obtaining payments through false claims. He was indicted on 19 counts of violating 18 U.S.C. §§ 1001 and 2. The

district court dismissed the conspiracy count and count 15.

At the conclusion of the government's evidence, the defense moved for a verdict of acquittal. The motion was denied by the district court. The jury convicted Fairchild on the remaining counts. He was sentenced to probation for a term of five years on each count, the sentences to run concurrently.

Fairchild appeals.

## ANALYSIS

18 U.S.C. § 1001 makes it a crime to submit a false statement to a federal agency. 18 U.S.C. § 2 provides as follows:

§ 2. Principals

(a) Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.

(b) Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal.

Fairchild argues that there was insufficient evidence to convict him of willfully causing the filing of false statements with the government. He argues the evidence shows that he neither made false statements himself, nor directed anyone else to make false statements. It is not disputed that he personally refused to sign the false QAMAs.

The defense and the government agreed that the jury should be instructed: "The defendant cannot be convicted unless the government proves to your satisfaction beyond a reasonable doubt that he acted willfully. One acts willfully if one does act voluntarily and intentionally and with the purpose of causing a false QAMA certificate to be filed with the government."

The evidence established that Fairchild knew what the contract specified, knew that QAMAs had to be supplied to the GSA and knew that So–Cal would not be paid if the QAMAs were not furnished. The evidence also established that he ordered the packing by weight with the knowledge that the number of bags per box would not meet the specifications of the contract. He acted voluntarily and intentionally and with the purpose of causing false QAMA certificates to be filed because he continued to order packing by weight after he knew that false certificates were being signed and supplied to the GSA.

A close parallel, under a different statute, is afforded by *United States v. Giles*, 300 U.S. 41, 57 S.Ct. 340, 81 L.Ed. 493 (1937). In that case a bank teller withheld deposit slips with the result that the bank's bookkeeper, unaware of the deposit slips, made false entries in the bank's ledger. The teller himself made no false entry, and he did not affirmatively direct a false entry. The Court upheld the bank teller's conviction because "the false entries in the ledger were the intended and necessary result" of the withholding of the deposit slips.

In oral argument the defense suggested that Kagel's action somehow broke the chain of causation. After all, his signing the QAMAs was the action of an independent person, who may or may not have been aware of the falsity of the certificates. But Kagel's state of mind in signing the certificates is irrelevant; what matters is whether Fairchild brought about the criminal act through his own conduct, i.e., whether Fairchild caused the filing of false certificates. *United States v. Causey*, 835 F.2d 1289, 1292 (9th Cir.1987) (where defendant caused taxpayers to file false tax returns, whether taxpayers had guilty knowledge that they were submitting false returns was irrelevant to defendant's liability under section 2(b)).

Fairchild continued to order packing by weight after Kagel signed false certificates. Fairchild's actions set in motion a process which he intended would be completed by the filing of the false certificates because his company was producing the bags and his company wanted and expected to be paid for the bags and would not be paid unless the certificates were signed. Fairchild acted for the end result of having the company compensated and he necessar-

ily acted to use the only means by which that goal could be reached, the completion of the false certificates.

The defense rightly insists that "the criminal intent essential to the commission of the crime must exist at the time of the criminal act." *United States v. Fox,* 95 U.S. 670, 671, 24 L.Ed. 538 (1877). The criminal acts were the false certifications of boxes containing fewer bags than specified in the GSA contract. In ordering the production and shipment of boxes with the knowledge that they must and would be accompanied by signed QAMA certificates, and that the certificates necessarily would be false, Fairchild evinced the requisite criminal intent.

**AFFIRMED.**