UNITED STATES of America, Plaintiff–Appellee,

v.

Richard Glen MATHEWS, Defendant–Appellant.

No. 93–50359.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted April 5, 1994.

Decided Sept. 13, 1994.

---

Michael Dowd, Milberg, Weiss, Bershad, Specthrie & Lerach, San Diego, CA, for defendant-appellant.

Larry Burns, Asst. U.S. Atty., San Diego, CA, for plaintiff-appellee.

Before: HUG, WIGGINS and NOONAN, Circuit Judges.

NOONAN, Circuit Judge:

At dawn May 15, 1991 James Wilson was making his way through the alley behind 10 Ebony Street, Imperial Beach, California, picking up aluminum cans. He noticed a box near 120 Ebony, a residence rented by James "Fat Man" Rivera, a motorcycle gang leader, and Rivera's girlfriend. Wilson picked up the box. A bomb within it detonated. Wilson was deafened, suffered the loss of a finger and multiple fractures, lacerations and burns, and was blinded. He died seven months later, his death accelerated by the trauma he had undergone. When the crime was investigated, Richard G. Mathews, the appellant here, admitted that he and Mike Webb had made the bomb, whose intended target was Rivera. The bomb had taken three days to make. It operated with a clock and battery. It contained steel balls designed to cause severe injury to any person or property near it. Mathews had driven Webb to the street where the bomb was planted. Mathews's admissions were confirmed by the testimony of Jeffrey Malley that at Mathews's request he had purchased a pound can of gunpowder which he had delivered to Mathews. These facts were established by evidence the government presented at Mathews's trial.

## PROCEEDINGS

After a jury trial, Mathews was found guilty of Count 1, conspiracy with Webb to bomb property in interstate commerce, in violation of 18 U.S.C. §§ 371 and 844(i); of Count 2 of bombing property in interstate commerce in violation of 18 U.S.C. § 844(i); of Count 3, using and carrying a firearm (the bomb) during and in relation to the crime of

violence charged in Count 2, in violation of 18 U.S.C. §§ 924(c)(1) and (2); of Count 5, being a felon in possession of a firearm (the bomb) in violation of 18 U.S.C. §§ 922(g)(1) and 924(e)(1); of Count 6, unlawfully manufacturing the bomb in violation of 26 U.S.C. §§ 5861(f), 5871, and 18 U.S.C. § 2; and of Count 7, being in unlawful possession of an unregistered firearm (the bomb) in violation of 26 U.S.C. §§ 5861(d), 5871 and 18 U.S.C. § 2. He was sentenced to 15 years and 8 months imprisonment on Count 2 and to 30 years imprisonment, consecutive to Count 2, on Count 3, and to terms concurrent with his Count 2 conviction as to the other counts, his total sentence being 45 years and 8 months.

Mathews appeals. Most of the issues he raises are dealt with in a memorandum disposition issued contemporaneously with this opinion. Here we address only two points, as to which there is no controlling Ninth Circuit authority.

*Cumulative Punishment For The Use Of The Bomb And For Carrying The Bomb In Relation To A Crime Of Violence.*

Mathews vigorously contends that sentencing on Counts 2 and 3 constitutes double jeopardy and double punishment for the same conduct. He concedes that Congress may impose multiple punishments for the same conduct without violating the Constitution, *Albernaz v. United States,* 450 U.S. 333, 344, 101 S.Ct. 1137, 1145, 67 L.Ed.2d 275 (1981), but observes that there is still a requirement that there actually be "two offenses" and the test "is whether each provision requires proof of a fact which the other does not." *Id.,* (quoting *Blockburger v. United States,* 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932)).

■ In the case of bank robbery committed with a firearm, Congress intended both to punish the bank robbery effected with the weapons (which is a crime distinct from unarmed bank robbery) and to add a mandatory penalty for the use of the gun in connection with the robbery as provided by 18 U.S.C. § 924(c). *United States v. Browne,* 829 F.2d 760 (9th Cir.1987), *cert. denied,* 485 U.S. 991, 108 S.Ct. 1298, 99 L.Ed.2d 508 (1988). The bank robbery case is the appropriate analogy here. Congress intended to punish both the crime of violence effected by the use of the bomb under 18 U.S.C. § 844(i) and, cumulatively, to add the punishment for carrying the bomb in relation to this crime of violence. 18 U.S.C. § 924(c)(1) and (2). Mathews's action in transporting Webb and the bomb to the alley where it was placed is the fact which makes him liable under 18 U.S.C. § 924(c). It is a fact distinct from the use of the bomb which makes him liable under 18 U.S.C. § 844(i).

*Attempted Murder.*

The district court sentenced Mathews under United States Sentencing Guidelines § 2K1.4, which provides:

> If death resulted, or the offense was intended to cause death or serious bodily injury, apply the most analogous guideline from Chapter Two, Part A (Offenses Against the Person) if the resulting offense level is greater than that determined above.

U.S.S.G. § 2K1.4(c)(1).

Having correctly determined that the cross-reference applied, the district court went on to conclude that the most analogous guideline was that for attempted murder, § 2A2.1. Under that section, the base offense level is 28 if the object of the offense would have constituted murder in the first degree, otherwise it is 22. The district court settled on the base offense level of 28, and then increased by four levels, as permitted under § 2A2.1(b)(1), because "the victim sustained permanent or life-threatening bodily injury." U.S.S.G. § 2A2.1(b)(1).

■ Mathews argues that it is not clear that the bomb was planted next to the small structure in which Rivera was living, because Wilson said only that he picked up the package near some dumpsters. It is clear from the effect of the explosion that the bomb was close enough to Rivera's home to destroy it and that the destruction would have killed or caused serious bodily injury to anyone within. At the very least Mathews was reckless in creating a danger to human life. It is not, however, clear by even a preponderance of the evidence that Mathews had the intent requisite to constitute first degree murder.

Consequently, Mathews should not have been sentenced as though he had attempted this crime.

**AFFIRMED in all respects except as to sentence and REMANDED.**

WIGGINS, Circuit Judge, concurring in part and dissenting in part:

I concur in the opinion to the extent that it affirms Mathews's conviction, but I respectfully dissent from the majority's holding that Mathews was incorrectly sentenced. The majority rejects the district court's conclusions of fact where the evidence requires us, under the proper standard of review, to affirm.

While the district court finds facts for sentencing purposes by a preponderance of the evidence, *United States v. Restrepo*, 946 F.2d 654 (9th Cir.1991) (en banc), *cert. denied,* — U.S. —, 112 S.Ct. 1564, 118 L.Ed.2d 211 (1992), this court reviews the district court's factual findings for clear error. *United States v. Notrangelo*, 909 F.2d 363, 364 (9th Cir.1990); *United States v. Carvajal*, 905 F.2d 1292, 1295 (9th Cir.1990); *United States v. Christman*, 894 F.2d 339, 342 (9th Cir. 1990).

In this case the question is whether Mathews had the intent required for first degree murder, so as to be liable to sentencing under the guideline for attempted murder, U.S.S.G. § 2A2.1(a)(1). Application note 2 to that guideline refers one to the following definition of first degree murder.

> Murder is the unlawful killing of a human being with malice aforethought. Every murder perpetrated by poison, lying in wait, or any other kind of willful, deliberate, malicious, and premeditated killing; or committed in the perpetration of, or attempt to perpetrate, any arson, escape, murder, kidnaping [sic], treason, espionage, sabotage, aggravated sexual abuse or sexual abuse burglary, or robbery; or

perpetrated from a premeditated design unlawfully and maliciously to effect the death of any human being other than him who is killed, is murder in the first degree.

18 U.S.C. § 1111(a). The specific intent required for attempted murder is not, of course, described by the two clauses describing felony murder and transferred intent. Therefore, the appropriate question is whether the district court clearly erred by finding that Mathews, with premeditation, wilfully, deliberately and maliciously attempted to kill someone.[1] The majority, however, inverts the inquiry on review by insisting that the fact found be at least "clear by a preponderance of the evidence ...," opinion at 823, before it survives review.

The real evidence of intent in this case is on the side of finding an intent to kill. The bomb was packed with ball bearings that would act as shrapnel. That fact alone is highly probative of the intended effect of the bomb. The majority seems to think that this feature could have been intended to cause damage to property, as well as to injure persons. As any soldier can tell you, prefragmented shrapnel is the hallmark of antipersonnel munitions because the projectiles penetrate soft human tissue and kill by internal injuries, giving smaller explosive charges a much more lethal effect against human beings.[2] Any increase in property damage is incidental and minimal, such as the breaking of windows. An incendiary or percussion device is more in line with an intent to damage property. The district court was within its rights to view the addition of prefragmented shrapnel as evidence of the intent to kill.

That intent is further supported by the connection between the bomb and a victim whom Mathews had a motive to murder. The bomb was placed in a location where a likely victim would be James Rivera, a known enemy of Mathews. Rivera had threatened

---

1. I note that there probably is also a substantial legal argument that an attack by time-bomb is, like that by poison, necessarily a "kind of willful, deliberate, malicious, and premeditated killing" for which no further specific evidence of the perpetrator's actual mental state is required to prove the mens rea for first degree murder.

2. An expert witness testified at trial that "[t]he purpose of additional shrapnel to [sic] the interior of the device is—is for anti-personnel purposes. Add more shrapnel and fragmentation to your device, increase your chance of killing or injuring personnel."

Mathews's life. A reasonable inference therefrom is that Mathews intended the bomb as a preemptive attack, and the most reasonable purpose of such an act is to eliminate, rather than merely to frighten or wound, the target. Any lesser attack would just invite retaliation. Finally, the district court recognized that Mathews's extreme antisocial inclinations, including a prior first-degree murder, supported the conclusion that Mathews was capable of an intent to do more than just annoy.

What evidence of an intent other than to murder demands the conclusion that Mathews did not intend to kill Rivera? Only the majority's speculations that maybe Mathews intended the bomb to do something other than kill. The majority opinion does not list a single fact that militates against finding the intent to kill. It only opines that various bits of evidence were equivocal, and then proceeds improperly to weigh the evidence and come to a conclusion opposite to that reached by the district court.

Simply put, the district court could easily have concluded that a preponderance of the evidence indicated that Mathews intended to kill someone because there was significant evidence that Mathews did so intend, and none that he did not. The district court's factual determination, therefore, is not clearly erroneous.[3] It is not our place to reweigh the evidence. This court is obliged to affirm the sentence, and I dissent from its failure to do so.

---

3. In fact, the evidence might well be sufficient even to sentence for first degree murder itself under a felony murder theory. The question would be whether the death of the victim, James Wilson, which occurred seven months after the accident, was proximately caused by the explosion. On remand, should the district court, as finder of fact, conclude by a preponderance of the evidence that Wilson died as a result of the blast, it may sentence Mathews for first degree murder, subject (of course) to the statutory maximum for the crimes of conviction and double jeopardy limitations.