UNITED STATES of America,
Plaintiff–Appellee,

v.

Robert John COLLINS, Defendant–
Appellant.

No. 96–10174.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Feb. 10, 1997.

Decided March 27, 1997.

1414

Janet S. Bessemer, John C. Lambrose, Assistant Federal Public Defenders, and James G. Connell, III, Research & Writing Specialist, Las Vegas, Nevada, for defendant–appellant.

Thomas R. Green and Walter L. Ayers, Assistant United States Attorneys, Las Vegas, Nevada, for plaintiff–appellee.

Before: SCHROEDER, ALARCON, and O'SCANNLAIN, Circuit Judges.

ALARCON, Circuit Judge.

Robert J. Collins timely appeals from the judgment in this matter. The Government presented evidence that Robert J. Collins caused a destructive device to be mailed to the home of Nevada Highway Patrol Trooper Kenneth Gager. The device was designed to explode when the container was opened by the addressee. Trooper Gager and his wife were injured when the destructive device exploded. Collins rested without introducing any evidence. He was convicted, after a trial by jury, of conspiracy to make and mail a destructive device with the intent to kill and injure in violation of 18 U.S.C. § 1716 and 26 U.S.C. §§ 5822, 5861(f), and 5871 (count 1); making an unlawful destructive device and aiding and abetting in violation of 18 U.S.C. § 2, and 26 U.S.C. §§ 5841, 5861(d), and 5871 (count 2); possession of an unlawful destruc-

tive device and aiding and abetting in violation of 18 U.S.C. § 2 and 26 U.S.C. §§ 5841, 5861(d), and 5871 (count 3); mailing a destructive device with the intent to kill and injure and aiding and abetting in violation of 18 U.S.C. §§ 2 and 1716 (count 4); and use of a destructive device during and in relation to a crime of violence and aiding and abetting in violation of 18 U.S.C. §§ 2 and 924(c) (count 5).

He seeks reversal of the judgment of conviction on four grounds:

One. The district court deprived him of his Sixth Amendment right to a fair and impartial jury by denying his motion for a change of venue.

Two. The district court deprived him of his right to due process by ordering the marshal to shackle him during his trial by jury.

Three. The evidence is legally insufficient to demonstrate that he used a destructive device during and in relation to the crime of conspiracy to make and mail a destructive device with the intent to kill and injure, as charged in count 1, and the crime of mailing a destructive device with the intent to kill or injure as charged in count 4.

Four. The conviction for use of a destructive device during and in relation to the commission of a crime of violence pursuant to § 924(c)(1) constitutes double punishment because the crimes charged in counts 1 and 4 cannot be committed without mailing a destructive device. We affirm the judgment of conviction because we conclude that none of these contentions has merit.

Collins also asks us to vacate the sentence. He contends that the district court clearly erred in finding that he mailed the destructive device with the intent to murder the addressee. He also asserts that the district court abused its discretion in imposing an upward departure of eight points for the injuries resulting from the explosion of the destructive device when the addressee opened the package mailed to him by Collins. We hold that the district court's finding that Collins intended to murder Trooper Gager was supported by a preponderance of the evidence. We conclude that the district

court did not abuse its discretion in departing upward because the sentencing guidelines do not adequately take into consideration the construction by a defendant of a destructive device with the intent to enhance the pain and maximize the injuries suffered by the victim. We discuss each contention and the facts pertinent thereto under separate headings.

I

DENIAL OF THE MOTION FOR A CHANGE OF VENUE

Collins contends that the district court erred in denying his motion for a change of venue because the responses of the members of the jury panel regarding the impact of the pretrial publicity about this case "demonstrated actual partiality or hostility that could not be laid aside." (Appellant's Opening Br. at 14.) We review a trial court's denial of a motion for change of venue for abuse of discretion. *United States v. Corona,* 34 F.3d 876, 878 (9th Cir.1994).

A change of venue must be granted when there exists in the district "so great a prejudice against the defendant that the defendant cannot obtain a fair and impartial trial." Fed.R.Crim.P. 21(a). Prejudice can be either presumed or actual. *Jeffries v. Blodgett,* 5 F.3d 1180, 1189 (9th Cir.1993), cert. denied, 510 U.S. 1191, 114 S.Ct. 1294, 127 L.Ed.2d 647 (1994). "Prejudice is presumed when the record demonstrates that the community where the trial was held was saturated with prejudicial and inflammatory media publicity about the crime." *Harris v. Pulley,* 885 F.2d 1354, 1361 (9th Cir.1988), cert. denied, 493 U.S. 1051, 110 S.Ct. 854, 107 L.Ed.2d 848 (1990). Collins does not claim that the media reports about this crime were prejudicial or inflammatory.

Actual prejudice is demonstrated where a sufficient number of the jury panel "had such fixed opinions that they could not judge impartially the guilt of the defendant" so that it is clear that a trial before that panel would be inherently prejudicial. *Id.* at 1364 (quoting *Patton v. Yount,* 467 U.S. 1025,

1035, 104 S.Ct. 2885, 2891, 81 L.Ed.2d 847 (1984)).

■ In deciding whether there was actual prejudice against a defendant in the district, we "must determine if the jurors demonstrated actual partiality or hostility that could not be laid aside." *Harris*, 885 F.2d at 1363. "[A] key factor in gauging the reliability of juror assurances of impartiality is the percentage of veniremen who 'will admit to a disqualifying prejudice.'" *Id.* at 1364 (quoting *Murphy v. Florida*, 421 U.S. 794, 803, 95 S.Ct. 2031, 2037, 44 L.Ed.2d 589 (1975)).

Here, the original jury panel consisted of 97 persons. Seventeen were excused for personal reasons. In response to a jury questionnaire, 46 of the 80 remaining prospective jurors replied that they had been exposed to media accounts of the crime. Eighteen panel members indicated that they believed that Collins was guilty based on pretrial publicity. Nine of this group were excused for cause because they stated they could not set aside their belief that Collins was guilty. The remaining nine prospective jurors who had formed an opinion regarding the defendant's guilt informed the court that they could set aside their opinion of guilt and decide the case on the evidence presented during the trial.

Twelve of the 16 jurors who were sworn to serve as jurors or alternates were aware of the case through pretrial publicity. Two of the 12 jurors who served on the panel initially indicated that they had formed an opinion that Collins was guilty. During the voir dire examination conducted by the court and counsel, these jurors stated that they could decide the guilt of the defendant solely on the evidence presented in court. Collins did not challenge either of these jurors for cause.

■ In this matter, nine of the ninety-seven prospective jurors admitted that their opinion of the defendant's guilt would not be changed by the evidence. In measuring the reliability of a juror's assurances of impartiality, the number of potential jurors who held "fixed opinions as to the guilt of petitioner" is measured against the number of jurors on the panel. *Irvin v. Dowd*, 366 U.S.

717, 727, 81 S.Ct. 1639, 1645, 6 L.Ed.2d 751 (1961). In *Irvin*, the Court held that excusing 268 members for cause from a panel consisting of 430 persons demonstrated a "pattern of deep and bitter prejudice" that "give[s] little weight" to their assurances of impartiality. *Id.* at 727–28, 81 S.Ct. at 1645.

■ The Court held in *Murphy* that an inference of actual prejudice did not exist when "20 of the 78 persons questioned were excused because they indicated an opinion as to petitioner's guilt." 421 U.S. at 803, 95 S.Ct. at 2037. In *Murphy*, approximately 26% (25.64%) of the jurors were biased against the defendant. Here, only 9.27% of the members of the jury panel held a fixed opinion regarding Collins' guilt. Accordingly, Collins has failed to demonstrate that he was deprived of his right to a fair and impartial jury. The district court did not abuse its discretion in denying Collins' motion for a change of venue.

## II

### VALIDITY OF THE SHACKLING ORDER

■ The district court ordered the marshal to shackle Collins during the trial of this matter. Collins maintains that he was deprived of his right to due process because the district court "did not have sufficient cause to conclude that chaining the Appellant to the table was compelled." (Appellant's Opening Br. at 18.) We review a district court's decision to shackle a defendant for an abuse of discretion. *United States v. Baker*, 10 F.3d 1374, 1401 (9th Cir.1993), *cert. denied*, 513 U.S. 934, 115 S.Ct. 330, 130 L.Ed.2d 289 (1994). "[G]enerally, a defendant has the right to appear before the jury free of shackles or other restraints." *Wilson v. McCarthy*, 770 F.2d 1482, 1484 (9th Cir. 1985). A defendant's appearance in shackles "may reverse the presumption of innocence by causing jury prejudice" thereby denying him due process. *Jones v. Meyer*, 899 F.2d 883, 884 (9th Cir.), *cert. denied*, 498 U.S. 832, 111 S.Ct. 95, 112 L.Ed.2d 67 (1990); *see Duckett v. Godinez*, 67 F.3d 734, 748 (9th Cir.1995) (holding that because of the potential for prejudice, due process requires that

shackles be used as a "last resort"), *cert. denied,* —— U.S. ——, 116 S.Ct. 1549, 134 L.Ed.2d 651 (1996). However, the trial court "has discretion to use shackles or other security measures when circumstances dictate." *Wilson,* 770 F.2d at 1484.

The evidence presented by the Government demonstrated that Collins discussed methods of escaping from custody with inmates who had previously escaped, including the faking of medical emergencies. He also had conversations with inmates who had keys to handcuffs. In addition, Collins spoke to his jailmates about plans to kill custodial officers and explained to them that he had someone who was not in custody keeping track of the deputies. The court was also advised that Collins scraped the caulking from the window to his cell, and removed mortar from between the concrete blocks of the wall.

During earlier court proceedings before the magistrate judge, Collins lunged at Trooper Gager and attempted to "head butt" a photographer. In opposing the Government's request that the court order that Collins be shackled, Collins' trial counsel argued that these alleged incidents constituted normal behavior for most inmates. No evidence was presented in support of this remarkable proposition.

■ We have developed a two-step process that a trial judge must use in determining whether to restrain a defendant. First, "compelling circumstances must persuade the court that some measure is needed to maintain courtroom security." *Baker,* 10 F.3d at 1401. Second, "less restrictive alternatives to shackling" must be pursued. *Id.* Additionally, "[i]f the alternatives [to shackling] are less onerous yet no less beneficial, due process demands that the trial judge opt for one of the alternatives." *Id.* (quoting *Spain v. Rushen,* 883 F.2d 712, 728 (9th Cir.1989), *cert. denied,* 495 U.S. 910, 110 S.Ct. 1937, 109 L.Ed.2d 300 (1990)).

■ The United States Marshal Service ("USMS") reported to the court that there was a need for heightened courtroom security. We are persuaded from the facts submitted by the Government that the district court did not abuse its discretion in finding that there was a compelling necessity to order some form of restraint to maintain courtroom security and to protect the safety of the custodial officers.

Collins next argues that the district court abused its discretion by failing to order a less restrictive means of restraint such as a taser belt. The record shows that the district court did consider the use of a taser belt, but rejected this form of restraint because it had not been approved for use by the USMS, and the court's custodial officers were not trained in its operation.

The court also rejected the recommendation of the USMS that Collins be handcuffed and shackled to a weighted trash can during trial. Instead, the court ordered that Collins' shackles be anchored to the floor. To prevent the jury from observing that Collins was shackled, the court ordered that the prosecution and defense counsels' tables be draped. Thus, contrary to Collins' contention, after weighing various alternatives, the court adopted a means of restraint that was not visible to the jury. Collins has failed to demonstrate that his right to due process was prejudiced because there is no evidence the jury was aware that he was shackled or restrained.

## III

## ENHANCEMENT BASED ON THE USE OF PHYSICAL FORCE

Collins asserts that the punishment cannot be enhanced pursuant to section 924(c)(1) where, as here, the indictment alleges a conspiracy to make and mail a destructive device with the intent to kill and injure the addressee. Accordingly, he argues that the district court erred as a matter of law in denying his motion for the entry of a judgment of acquittal regarding count 5 of the indictment.

■ He maintains that the offenses charged in counts 1 and 4 are not crimes of violence. We disagree. Section 924(c)(1) provides that a person who uses a destructive device "during and in relation to any crime of

violence" shall receive an additional punishment of thirty years.[1]

The term "crime of violence" is defined in the statute as follows:

an offense that is a felony, and

(A) has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or

(B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

18 U.S.C. § 924(c)(3)(A) & (B).

In count 1, Collins was charged with conspiracy to make, to deposit for mailing, and to cause a destructive device to be delivered with the intent to kill or injure in violation of 18 U.S.C. § 1716. Collins was accused in count 4 of mailing a device with the intent to kill and injure Trooper Kenneth Gager in violation of 18 U.S.C. § 1716. Thus, contrary to Collins' contention, each of the substantive crimes alleged in count 1 and count 4 has as an element the use or attempted use of physical force, i.e., the use or attempted use of a destructive device to kill or injure another person.

Relying on *Bailey v. United States*, —— U.S. ——, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995), Collins argues that the mailing of a destructive device that is constructed to explode upon opening does not constitute "use." Collins' reliance on *Bailey* is misplaced. In *Bailey*, the Court instructed that "[t]o sustain a conviction under the 'use' prong of § 924(c)(1), the Government must show that the defendant actively employed the firearm during and in relation to the predicate crime." *Id.* at ——, 116 S.Ct. at 509. The evidence is undisputed that Collins actively employed a destructive device during and in relation to mailing it with the intent to kill or injure Trooper Gager. The district court did not err in concluding that the mailing of a destructive device with the intent to kill or injure is a violation of section 924(c)(1).

Collins appears to argue that the evidence is insufficient to demonstrate that he mailed the destructive device to Trooper Gager. The evidence is undisputed that Collins directed Avrom Sander Finkel to mail the destructive device. The act of an intermediary does not break "the chain of causation." *United States v. Fairchild*, 990 F.2d 1139, 1141 (9th Cir.), *cert. denied*, 510 U.S. 898, 114 S.Ct. 266, 126 L.Ed.2d 217 (1993). Employing another person to perform a criminal act does not immunize the principal from the acts of his agent. *See United States v. Giles*, 300 U.S. 41, 48–49, 57 S.Ct. 340, 344, 81 L.Ed. 493 (holding that a criminal statute applies to a defendant who directs that a criminal act be performed through an intermediary and stating that the accused need not personally perform the criminal act to be held liable); *Fairchild*, 990 F.2d at 1141 (holding that "what matters is whether [the defendant] brought about the criminal act through his own conduct"). Here, Collins directed Finkel to mail the destructive device to carry out Collins' intent to kill and injure Trooper Gager. Accordingly, Collins is as liable as if he had personally placed the destructive device in the mail with the intent to kill or injure Trooper Gager.

IV

## SECTION 924(c)(1) PERMITS ADDITIONAL PUNISHMENT FOR THE SAME ACT

Collins maintains that "the conviction and sentence imposed on count 5 result[ed] in Collins being punished twice (or three times) for the 'same offense'" because "[t]he same destructive device forms the basis of count 5 and counts 1, 2 and 4." (Appellant's Opening Br. at 24.) Collins argues that there is insufficient evidence to support double punishment. We review *de novo* the question whether a defendant has been subjected to double punishment. *United States v. Scarano*, 76 F.3d 1471, 1474 (9th Cir.1996).

---

**1.** Section 924(c)(1) states in relevant part: Whoever, during and in relation to any crime of violence ... for which he may be prosecuted in a court of the United States, uses ... a firearm, shall, in addition to the punishment provided for such crime of violence ... be sentenced to imprisonment for five years, and if the firearm is ... a destructive device ... to imprisonment for thirty years.

■ Section 924(c)(1) expressly provides that the punishments imposed for "use of a deadly or dangerous weapon or device" shall be in "addition to the punishment provided for [the predicate] crime of violence." "Where a legislature specifically authorizes cumulative punishments under two statutes, regardless of whether those two statutes proscribe the same conduct, the trial court may impose cumulative punishment in a single trial." *United States v. Young,* 936 F.2d 1050, 1056 (9th Cir.1991) (quotations omitted). The sentence imposed on the count 5 violation of section 924(c)(1) did not violate the Double Jeopardy Clause of the United States Constitution.

V

## SUFFICIENCY OF THE EVIDENCE OF INTENT TO KILL

■ Collins asserts that the district court clearly erred in finding that he acted with the intent to commit murder in causing Finkel to mail the destructive device to Trooper Gager. Based on this finding, the district court applied United States Sentencing Guidelines ("U.S.S.G.") § 2A2.1 and calculated the base offense level at 28. We review for clear error a district court's factual findings in applying the sentencing guidelines. *United States v. McAninch,* 994 F.2d 1380, 1383 (9th Cir.), *cert. denied,* 510 U.S. 949, 114 S.Ct. 394, 126 L.Ed.2d 342 (1993). A district court must be persuaded that the facts support the application of a sentencing guideline by a preponderance of the evidence. *United States v. Restrepo,* 946 F.2d 654, 661 (9th Cir.1991) (en banc), *cert. denied,* 503 U.S. 961, 112 S.Ct. 1564, 118 L.Ed.2d 211 (1992). The preponderance of the evidence standard is met by a showing that the relevant fact is more likely true than not. *See id.* at 677 (noting that preponderance standard "allows a fact to be considered true if the factfinder is convinced that the fact is more probably true than not, or to put it differently, if the factfinder decides there is a 50%–plus chance that it is true") (Norris, J., dissenting).

■ The evidence presented by the Government clearly demonstrated that Collins intended to murder Trooper Gager. Collins first encountered Trooper Gager on February 3, 1991, when the officer stopped him for failing to have a metal license plate on his vehicle. Collins became angry at Trooper Gager because the officer issued a traffic citation. Collins crumpled up the citation in the officer's presence, and threw it on the floor of the car. Trooper Gager arrested Collins to ensure that he would appear in court for arraignment. A search of Collins' vehicle produced evidence of a violation of state law. Collins was prosecuted in state court. Trooper Gager testified against him in those proceedings.

Between February 3, 1991, and September 8, 1993, the date Trooper Gager opened the package containing the destructive device, Collins stalked the officer at three different residences. Several months before Gager's birthday, Collins drove by Trooper Gager's residence. Collins told his wife that the officer was going to get a surprise birthday present and made a hand gesture indicating an explosion.

Collins' daughter observed Collins and Finkel working on a box in the garage. The box contained nuts, bolts, screws, nails, colored wires, batteries, and a claw hammer-like object. She heard them say that the box was going to be a gift for someone.

Finkel testified that he and Collins made three prototypes of a destructive device based on an article in the "Anarchist's Cookbook" describing the construction of a bomb. Collins' wife found a copy of the "Anarchist's Cookbook" in their residence. Each of the bombs was constructed so as to explode upon opening when armed with explosives. In late August 1993, Collins told Finkel he was going to Alaska. He asked Finkel to mail a package for him. He instructed Finkel not to look at the name and address on the package. Collins did not go to Alaska. Instead, he was committed to a mental hospital by a state court on August 27, 1993.

An explosives expert who examined the evidence collected after the explosion at Trooper Gager's residence testified that the type of device used by Collins is characterized as "enhanced fragmentation." The ex-

plosive charge was sufficient to kill the person who opened the package. The expert testified that staples, screws, and nails were added to enhance fragmentation in order to cause severe pain and death.

■■■ Collins contends that the jury's verdict that Collins was guilty of count 4 cannot be relied upon as establishing that he acted with the intent to murder. He maintains that because the jury was instructed that the Government must prove that Collins acted with intent to kill or injure, it cannot be determined whether the jury found that he acted with the intent to kill. This argument ignores the principle that "sentencing is the province of the judge, not the jury." *United States v. Sherpa,* 97 F.3d 1239, 1244 (9th Cir.1996). "[A] sentencing judge may consider evidence other than that considered by the jury at trial." *Dallas v. Arave,* 984 F.2d 292, 296 (9th Cir.1993). Even "a jury's verdict of acquittal does not prevent the sentencing court from considering conduct underlying the acquitted charge, so long as that conduct has been proved by a preponderance of the evidence." *United States v. Watts,* ── U.S. ──, ──, 117 S.Ct. 633, 638, 136 L.Ed.2d 554 (1997). The evidence presented by the Government was sufficient to persuade the district court that it was more probably true than not that Collins mailed the destructive device to Trooper Gager with the intent to murder him.

Collins contends that our decision in *United States v. Mathews,* 36 F.3d 821 (9th Cir. 1994), requires us to vacate the district court's finding that Collins mailed a destructive device with the intent to murder Trooper Gager. *Mathews* is clearly distinguishable. In *Mathews,* the defendant was found guilty of the crimes of conspiracy and the bombing of property. 36 F.3d at 822. The bomb was placed close to, but outside the victim's residence. *Id.* We vacated the sentence because we concluded that the evidence was insufficient to demonstrate that the defendant placed the bomb outside of the residence with the intent to murder. *Id.* at 823–24. Here, the evidence is sufficient to demonstrate that he mailed the destructive device with the intent to murder.

Citing *United States v. Mills,* 1 F.3d 414 (6th Cir.1993), Collins also argues that we must look to the gravamen of the offense to support a guideline enhancement. In *Mills,* the defendant was charged with burglary. 1 F.3d at 417. The Sixth Circuit held that it was an error to assign the base offense level for an aggravated assault to the crime of burglary because "assault was not the gist of [the] offense." *Id.* at 422. In the instant matter, the gist or gravamen of the crimes alleged in counts 1 and 4 is the mailing of a destructive device with the intent to kill. The district court did not clearly err in finding that Collins intended to murder Trooper Gager.

## VI

## DEPARTURE FROM THE GUIDELINES WAS BASED ON UNUSUAL CIRCUMSTANCES

The district court departed upward from the base offense level set forth in U.S.S.G. § 2A2.1(b)(1)(A). Section 2A2.1(b)(1)(A) is applicable when the court finds that the defendant attempted to murder the victim. Section 2A2.1(b)(1)(A) provides for an increase of four levels for a permanent or life threatening injury. The district court departed upward eight offense levels. Congress has authorized a district court to depart upward if it identifies "an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described." 18 U.S.C. § 3553(b). Pursuant to U.S.S.G. § 5K2.0 a district court may depart on the basis of a factor expressly taken into consideration by the guidelines if "the court determines that, in light of unusual circumstances, the guideline level attached to that factor is inadequate."

■■■ Collins contends that the district court abused its discretion in departing upward because, in adopting section 2A2.1(b)(1)(A), the Sentencing Commission considered the appropriate punishment for inflicting permanent and life threatening in-

juries from an attempt to murder the victim.[2] We review a district court's decision to depart from the sentencing guidelines for abuse of discretion. *Koon v. United States,* —— U.S. ——, —— – ——, 116 S.Ct. 2035, 2046–48, 135 L.Ed.2d 392 (1996).

The district court departed from the applicable guideline because Trooper Gager suffered "from dreadful permanent injuries." The record shows that the injuries were caused by a destructive device that was deliberately constructed so as to enhance fragmentation in order to cause severe pain or death. In enacting section 2A2.1(b)(1)(A), the Sentencing Commission did not adequately take into consideration the construction of a destructive device that will inflict severe pain and maximize injury, or loss of a bodily member, or organ. The district court did not abuse its discretion in determining that, in light of the unusual circumstances of this case, the factors set forth in section 2A2.1.(b)(1)(A) are inadequate to fit the enormity of the injuries inflicted upon Trooper Gager by means of a device constructed specifically to cause severe pain and multiple permanent injuries.

The Supreme Court instructed in *Koon* that a district court's decision to depart from the guidelines is "due substantial deference." *Koon,* —— U.S. at —— – ——, 116 S.Ct. at 2046–47. We agree with the district court that its discretion to depart from the sentencing guidelines must be made on a case-by-case basis. Where, as here, the record shows that the accused intended to enhance the pain and extent of injuries suffered by his victim, a departure from the sentencing guidelines is justified. Section 2A2.1(b)(1)(A) does not address the appropriate punishment for someone who acts with the deliberate intent to maximize his victim's pain and injuries. We conclude that the district court did not abuse its discretion in determining that an upward departure was justified because Collins deliberately constructed a device to inflict pain and extensive life threatening and permanent injuries or death.

## VII

## WHETHER AN UPWARD DEPARTURE IS WARRANTED IF MORE THAN ONE PERSON IS INJURED

Collins asserts that the district court erred by upwardly departing one level for Mrs. Gager's injuries because the sentencing provisions of 18 U.S.C. § 924(c) reflect the substantial risks to more than one person inherent in a conviction for mailing an explosive device. The record shows that the district court found upward departures which raised the offense level to forty-five, three levels above the statutory maximum. None of the individual charges in Collins' indictment authorized the imposition of a life sentence. Under the sentencing guidelines, a life sentence is imposed at an offense level of forty-three. U.S.S.G. Sentencing Table. As a result, the statutory maximum sentence that the court could impose was forty-two. *Id.* "In order to determine whether the sentencing error is harmless, we must 'look to the record, in particular the district court's sentencing remarks, to determine whether the district court would have imposed the same sentence absent the erroneous factor.'" *United States v. Robinson,* 63 F.3d 889, 891 (9th Cir.1995) (quoting *United States v. Rodriguez–Razo,* 962 F.2d 1418, 1423 (9th Cir.1992)); *see United States v. Munster–Ramirez,* 888 F.2d 1267, 1273 (9th Cir.1989) (holding that we decline to review the sentence adjustment of a district court if it could not affect the sentence imposed), *cert. denied,* 495 U.S. 920, 110 S.Ct. 1951, 109 L.Ed.2d 313 (1990). The district court held that the departures for Trooper Gager's and Mrs. Gager's injuries "would take us beyond an offense level of forty-three, but ... the life sentence is not available under the statute and so [the court] must follow the maximum statutory language in imposing sentence." Sentencing Tr. at 90. Thus, a decision by this court that the district court erroneously increased the total offense level by one would not affect the length of the

---

2. A permanent or life threatening injury is defined as an "injury involving ... loss or substantial impairment of the function of a bodily member, organ, or mental faculty that is likely to be permanent; or an obvious disfigurement that is likely to be permanent." U.S.S.G. § 1B1.1(h).

sentence imposed upon Collins. Because any error by the court concerning this departure is harmless, we decline to address the merits of this claim.

AFFIRMED.