UNITED STATES of America,
Plaintiff–Appellee,

v.

Viren R. PATEL, a/k/a Victor R.
Patel, Defendant–Appellant.

No. 94–1355.

United States Court of Appeals,
Eighth Circuit.

Submitted June 16, 1994.

Decided Aug. 9, 1994.

Brian W. Wice, Houston, TX, argued (Alfredo Parrish and Matthew M. Boles, Des Moines, IA, on the brief), for appellant.

Rodger Overholser, Cedar Rapids, IA, argued, for appellee.

Before RICHARD S. ARNOLD, Chief Judge, FLOYD R. GIBSON, Senior Circuit Judge, and WOLLMAN, Circuit Judge.

FLOYD R. GIBSON, Senior Circuit Judge.

Patel appeals his convictions on one count of giving a gratuity to a government official and one count of interstate travel to carry on or facilitate an unlawful activity in violation of 18 U.S.C. §§ 201(c)(1)(A) and 1952(a)(3), respectively. He also appeals his sentence. We affirm the district court.[1]

## I. BACKGROUND

We briefly recount the facts in the light most favorable to the verdict. Patel, a resident of Texas, was interested in acquiring a hotel; one of the properties he was interested in purchasing was the Envoy Inn in Columbus, Ohio. The hotel was owned by the Resolution Trust Corporation (RTC), which had acquired the property when it took over the failed Freedom Savings and Loan. The RTC awarded AEGON USA Realty Advisors, Inc., (AEGON) a contract to dispose of the assets from this financial institution. Steven Neighbors, an asset manager for AE-

---

1. The Honorable Michael J. Melloy, Chief Judge, United States District Court for the Northern District of Iowa.

GON, was responsible for the sale of the Envoy Inn.

AEGON hired Brant Niehaus of Dial–Huff & Associates as the broker for the Envoy Inn. Patel contacted Niehaus in early April 1993 and told him he saw the Envoy Inn advertised in an RTC information packet. On April 23, Niehaus received a formal offer from Patel in Patel's wife's name, offering to pay $600,000 cash for the hotel. Niehaus faxed the offer to Neighbors. Unbeknownst to Patel, RTC guidelines prohibited acceptance of his offer because it was less than 80% of the hotel's appraised value and the hotel had been listed for less than six months. Consistent with those same guidelines, Patel was not informed that his offer could not be accepted.

Patel called Niehaus to discuss the offer the same day he sent it to him. Patel told Niehaus he had an additional $50,000 and inquired whether Niehaus had any part in the decision-making process. Niehaus told Patel he lacked such authority and referred him to Neighbors, and explained AEGON's relationship with the RTC.

Patel was familiar with Neighbors, having spoken to him in March in order to obtain general information about RTC assets. During those prior conversations, Neighbors told Patel that the RTC was a federal agency that liquidated the assets of failed savings and loans, and that the RTC hired contractors, like AEGON, to act on its behalf. On April 26, Patel and Neighbors discussed Patel's offer for the Envoy Inn. After confirming that the offer with his wife's name was really his offer, Patel told Neighbors that an "associate" had an additional $50,000 that could go toward the purchase of the property. Neighbors asked whether this meant that Patel wanted to raise his offer to $650,000, but Patel said no, the $50,000 "was not a part of the offer, it was for [Neighbors] or for AEGON or whoever could help him get the property." Patel also explained that this was money the government could not see; the money was to be provided "under the mattress." Neighbors told Patel this would not be possible and promised to respond to the offer in writing.

Neighbors related the incident to his supervisor, and the FBI and the RTC were contacted. Neighbors agreed to cooperate in an investigation, and called Patel on April 29. Efforts to record this conversation failed, but Neighbors testified that Patel acknowledged his proposal was one that could get both of them in trouble. Neighbors and Patel had several more conversations, all of which were recorded. During these conversations, Patel expressed an understanding that they could go to jail and that they should not allow third parties to know about their deal. He expressed an understanding of RTC regulations, specifically one that required the purchaser to state, among other things, that the purchaser had never made an illegal bribe. Patel indicated that his wife was going to sign the papers as purchaser, so Patel would not be lying on the certification. He also told Neighbors that, "in India we do quite a lot with this, because government employees don't get paid much and that's [the] only way they make their living." Eventually, Patel and Neighbors discussed how the payment was to be effectuated. Patel expressed concerns about paying the entire $50,000 up front because he would have no recourse if Neighbors failed to convince the credit committee to approve his offer or if some unforeseen event blocked the sale. It was eventually decided that Patel would pay Neighbors $5,000 up front and $45,000 when the deal closed.

On May 22, Patel flew to Cedar Rapids, Iowa, and met with Neighbors at a hotel. This meeting was videotaped. During the meeting, Neighbors gave Patel a letter purporting to accept the $600,000 offer, and Patel gave Neighbors $5,000. Patel stated that he was sure everything would work out to his benefit because he had Neighbors working "inside for me." At the meeting's conclusion, Patel was arrested. Among the items in his briefcase was a brochure advertising property available for sale through the RTC.

Patel's defense, supported in part by his own testimony, was that Neighbors misunderstood him. Patel testified that he was merely trying to hire Neighbors as his own broker and that the $50,000 was intended as

a broker's fee. Patel also testified that he did not realize until after his arrest that the RTC was a government agency and that AEGON was the RTC's agent.

Patel was charged with one count of mail fraud, four counts of wire fraud, one count of bribery, and one count of travelling in interstate commerce to facilitate unlawful activity. The jury was also instructed on the elements of giving an unlawful gratuity, which is a lesser included offense of bribery. The jury acquitted Patel of the mail fraud, wire fraud, and bribery counts, and convicted him of giving an unlawful gratuity and of travelling in interstate commerce to commit bribery. The district court sentenced Patel to twenty months imprisonment on both counts, which sentences were to be served concurrently. Patel appeals.

## II.  DISCUSSION

### A.  The Travel Act Violation

■ Patel argues that his conviction for violating the Travel Act (Count VII) cannot stand because it is inconsistent with the jury's verdict acquitting him of bribing Neighbors. The government contends that giving a gratuity to a public official constitutes "bribery" within the meaning of the Travel Act, see *United States v. Biaggi*, 853 F.2d 89, 101–02 (2d Cir.1988), *cert. denied*, 489 U.S. 1052, 109 S.Ct. 1312, 103 L.Ed.2d 581 (1989),[2] but the jury instructions did not make this point.[3] Rather than delving into the problematic issue of whether the verdicts were actually inconsistent, we choose to affirm because it is clear that "[a] defendant convicted by a jury on one count cannot attack that conviction because it is inconsistent with the jury's verdict of acquittal on another count." *United States v. Suppenbach*, 1 F.3d 679, 681 (8th Cir.1993); *see also United States v. Powell*, 469 U.S. 57, 65–67,

105 S.Ct. 471, 476–478, 83 L.Ed.2d 461 (1984).

■ Patel also contends that the evidence was insufficient to support the verdict as to the Travel Act violation. His argument relies heavily on the fact that the jury acquitted him of the bribery charge, but we review the evidence in the light most favorable to the verdict, *United States v. Loftus*, 992 F.2d 793, 796 (8th Cir.1993), independent of the fact that the jury acquitted Patel of bribery. *Powell*, 469 U.S. at 67, 105 S.Ct. at 477. Under this standard, there was ample evidence to support the jury's verdict that Patel violated the Travel Act by traveling across state lines in order to give Neighbors a down-payment on a bribe.

### B.  Response to the Jury's Question

■ In another effort to challenge the verdict rendered on Count VII, Patel challenges the district court's treatment of a question asked by the jury during deliberations. The jury sent the following question to the district judge: "If defendant is found guilty of [giving a] gratuity to a public official, does that automatically make him not guilty of Counts 1, 2, 3, 4 and 5?" Counsel for both parties were consulted, and they agreed upon the following answer, which was delivered by the court:

> My answer to your question is, no, it does not automatically make the defendant not guilty of those counts. You will still be required to consider each of those counts separately and, in considering those counts, I would just instruct you to consider the previous instructions that were given to you about the definitions of "scheme to defraud, intent to defraud," as well as all the other instructions the Court has given to you and all the evidence, but that the lesser included offense of gratuity does not automatically result in a not guilty in 1, 2, 3, 4, 5 and 7.

**2.**  18 U.S.C. § 1952(a)(3) makes it unlawful to travel in interstate commerce with the intent to "promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on, of any unlawful activity." The Travel Act goes on to define "unlawful activity" to include bribery.  18 U.S.C. § 1952(b)(2) (1988).

**3.**  In pertinent part, the instruction stated that the jury had to find that Patel "traveled with the intent to promote or carry on an unlawful activity—in this case, bribery of a public official...." The instruction does not clearly state that the Travel Act violation could be predicated on a conviction of giving an unlawful gratuity.

Although he agreed to this answer at the time it was given, Patel now argues that the court's answer was insufficient for failing to tell the jury that its verdict on each count should "reflect deliberations that take into consideration all of the offenses separately." We review this mutually-agreed upon instruction for plain error, which allows Patel relief only if (1) the district court made an error, (2) the error was plain or obvious, and (3) it affected the outcome of the trial. *United States v. Olano,* —— U.S. ——, ——— ——, 113 S.Ct. 1770, 1777–78, 123 L.Ed.2d 508 (1993).

We are hard pressed to find anything wrong with the district court's answer. The court's answer is a correct statement of law (as recognized by the parties at the time it was discussed), and the language now favored by Patel is somewhat confusing as it seemingly contradicts the court's instruction to consider each count separately.

## C. Prosecutorial Misconduct

During cross examination, the government asked Patel's wife about a parking garage she and her husband had purchased in San Antonio. Negotiations for this transaction were occurring at approximately the same time as Patel's contacts with Neighbors, and the government was inquiring about this transaction in an attempt to establish that Patel knew the RTC was a government agency. After Patel's wife indicated that she did not know whether the parking lot was RTC property, the government asked whether she had "signed some closing papers on that within the last week or so." This question elicited an immediate objection (which was sustained) and motions for mistrial or, in the alternative, for a curative instruction (both of which were denied).

■ The grant or denial of a mistrial for a prosecutor's prejudicial remarks or ques-

tions is reversed only for an abuse of discretion. *United States v. Travis,* 993 F.2d 1316, 1322 (8th Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 229, 126 L.Ed.2d 184 (1993). In evaluating a prosecutor's remarks, we first determine whether they were improper; if they were improper, we then consider "whether they prejudicially affected the defendant's substantial rights so as to deprive him of a fair trial." *Id.* Most of the questions Patel complains of were proper; as the district court recognized, contracts that were being negotiated with the RTC at the same time Patel was negotiating with Neighbors were relevant to show Patel's knowledge about the nature of the RTC. The only question that might have been improper was the last one, which asked Patel's wife whether a deal with the RTC had recently closed.[4] At best this question was improper only because it was irrelevant, and we fail to see how the asking of this question prejudiced Patel. Accordingly, we rule that the district court did not abuse its discretion in denying Patel's motion for a mistrial.

## D. Jury Instructions

■ Patel contends Instruction No. 15, which instructed the jury on the crime of giving an illegal gratuity, was improper. We review this claim for plain error because Patel did not object to the instruction. *United States v. Williams,* 935 F.2d 1531, 1535 (8th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1189, 117 L.Ed.2d 431 (1992).[5]

■ The court instructed the jury that the crime of giving or offering an illegal gratuity consisted of the following three elements:

*One,* the defendant gave, offered or promised something of value to Steven Neighbors;

---

4. Though it sustained an objection to this question, the court expressed its belief that the question might be relevant to the credibility of both Patel and his wife.

5. Patel contends he preserved this ground for error by submitting a proposed instruction on this count. However, Patel failed to comply with the Fed.R.Crim.Pro. 30, which requires a party to "stating distinctly the matter to which that

party objects and the grounds of the objection." "At best, defense counsel merely offered [his] requested instructions to the trial judge for his consideration, and such an offer in and of itself is not sufficient to preserve an error based upon the judge's failure subsequently to use the requests." *United States v. Hecht,* 705 F.2d 976, 978–79 (8th Cir.1983).

*Two,* at that time Steven Neighbors was asset manager of AEGON Realty Advisors, Inc., and was acting on behalf of the Resolution Trust Corporation, an agency of the United States Government; and

*Three,* the defendant did this act because Steven Neighbors performed an official act for him or was going to perform an official act for him.

\* \* \* \* \* \*

That is, the government need not show that the defendant acted with intent to *influence or induce* Steven Neighbors to use his official position to obtain acceptance of the defendant's offer to purchase the Envoy Inn. However, the government must prove, beyond a reasonable doubt, that the defendant intended to reward Mr. Neighbors for past action or action Mr. Neighbors was already committed to take.

The instructions closely parallel the statutory language, *see* 18 U.S.C. § 201(c)(1)(A) (1988),[6] and fall well within the district court's discretion to choose the language that will formulate the charge. *United States v. Walker,* 817 F.2d 461, 463 (8th Cir.), *cert. denied,* 484 U.S. 863, 108 S.Ct. 181, 98 L.Ed.2d 134 (1987). We further note that the instruction Patel requested incorrectly states the law because it required the jury to find that Patel gave Neighbors the gratuity in order to influence him with respect to the hotel's sale, which is not supported by the language in § 201(c)(1)(A). Accordingly, no error was committed.[7]

**E. Sentencing**

**1. Amount of the Gratuity**

██ Patel contends the district court clearly erred in valuing the amount of loss to the government. This argument rests on the erroneous premise that the amount of loss is

relevant under the Sentencing Guideline that was applied to Patel's crime. The district court relied on § 2C1.2 of the Sentencing Guidelines, which states, *inter alia,* that "[i]f the value of the gratuity exceeded $2,000, increase by the corresponding number of levels from the table in § 2F1.1 (Fraud and Deceit)." U.S.S.G. § 2C1.2(b)(2)(A). In the context of *that* Guideline, the table in § 2F1.1 is used to measure the amount of loss caused by a defendant's fraudulent conduct, but in the context of § 2C1.2 it is not used to measure the amount of loss caused by a defendant's illegal gratuity. The numbers on § 2F1.1's table have simply been "borrowed" by § 2C1.1, and the only relevant inquiry is the value of the gratuity. The district court was not clearly erroneous in concluding that Patel promised to pay a gratuity of $50,000, and that the court properly added five levels to the Base Offense Level of seven, resulting in an Adjusted Base Offense Level of twelve.

**2. Obstruction of Justice**

██ The district court added two levels to the Adjusted Base Offense Level (resulting in Total Offense Level of fourteen) because it found that Patel obstructed justice by committing perjury during the trial. *See* U.S.S.G. § 3C1.1. Patel correctly argues that the adjustment cannot be made simply because he testified and the jury disbelieved him. "No enhancement should be imposed based on the defendant's testimony if a reasonable trier of fact could find the testimony true." *United States v. Willis,* 940 F.2d 1136, 1140 (8th Cir.1991), *cert. denied,* —— U.S. ——, 113 S.Ct. 1411, 122 L.Ed.2d 782 (1993). At sentencing, the district court made an independent determination that Patel perjured himself when he testified that he did not know the RTC was a government

---

**6.** Section 201(c)(1)(A) criminalizes the following conduct:

Whoever[,] otherwise than as provided by law for the proper discharge of official duty[,] directly or indirectly gives, offers, or promises anything of value to any public official, former public official, or person selected to be a public official, for or because of any official act performed or to be performed by such public official, former public official, or person to be selected a public official.

**7.** Patel also argues he was entrapped as a matter of law. There was no evidence that the idea to give Neighbors money originated in the government, nor was the offer provoked by any government activity. Patel was not entrapped simply because Neighbors went along with Patel's plan as part of an investigation into that conduct, nor is it relevant that the object of Patel's bribe/gratuity (*obtaining the Envoy Inn*) was precluded by RTC guidelines.

agency. Among the factors causing the court to reach this conclusion were (1) Patel had materials in his briefcase describing the RTC; (2) Patel was familiar with the certifications that the Code of Federal Regulations required purchasers of RTC property to sign, (3) Patel compared his arrangement with Neighbors to the method of doing business with government officials in India; and (4) Patel's acknowledgment that he and Neighbors could go to jail and insisting that Neighbors call from pay phones and take steps to avoid anyone finding out about their transaction. We are not convinced that the court's finding of perjury was clearly erroneous, *see id.,* and therefore affirm Patel's sentence.

### III. CONCLUSION

Discerning no error in either Patel's conviction or sentence, we affirm the district court in all respects.[8]

---

8. By previous order, the panel stayed Patel's reporting date for incarceration pending further order by the panel. We now dissolve our prior order.