_____

No. 95-2421
_____

United States of America,      *
                                    *

     Plaintiff - Appellee,     *
                                    *  Appeal from the United States

     v.                       *  District Court for the
                                    *  Eastern District of Arkansas.

Eugene Fitzhugh,          *
                                    *

     Defendant - Appellant.    *

_____

Submitted:  December 12, 1995

Filed:  March 15, 1996
_____

Before BOWMAN, BEAM, and LOKEN, Circuit Judges.
_____

LOKEN, Circuit Judge.

During his trial for the felony of conspiring to defraud the Small Business Administration, Eugene Fitzhugh pleaded guilty to a misdemeanor violation of 18 U.S.C. § 215, bribery with intent to influence an official of a financial institution.  Months later, Fitzhugh moved to withdraw that plea.  The district court denied the motion and sentenced Fitzhugh to one year in prison.  Fitzhugh appeals, arguing that the district court abused its discretion in denying his motion to withdraw the plea, the government withheld exculpatory evidence and engaged in selective prosecution, the special prosecutor exceeded his authority, and the court committed two sentencing errors.  We affirm Fitzhugh's conviction but remand for resentencing because the district court based a six-level enhancement on the face amount of a loan obtained through bribery, rather than on the value of the benefit conferred by that loan.  See U.S.S.G. § 2B4.1(b)(1).

## I. Background.

Fitzhugh is a Little Rock attorney with over thirty years experience. His role in the alleged conspiracy was to form sham corporations through which David L. Hale, President of Capital Management Services, Inc. ("CMS"), with the help of Charles Matthews, a broker at Prudential-Bache Securities, Inc., passed money for the purpose of misrepresenting CMS's financial affairs. The misrepresentation was intended to induce SBA to provide loans to CMS, a Small Business Investment Company. In return, Hale caused CMS to loan money to Fitzhugh's client, Harry Townsend.

A felony indictment was initially obtained by the United States Attorney for the Eastern District of Arkansas. When that office recused from all matters involving CMS because of allegations linking President and Mrs. Clinton with CMS, the Attorney General appointed Robert B. Fiske, Jr., as Independent Counsel to investigate possible violations of federal law "relating in any way to [President and Mrs. Clinton's] relationships with . . . Capital Management Services," and to prosecute offenses "developed during . . . and connected with or arising out of that investigation." See 28 C.F.R. § 603.1. Fiske then obtained a superseding indictment charging Fitzhugh, Hale, and Matthews with the same conspiracy offense.

On June 23, 1994, Fitzhugh agreed to plead guilty to misdemeanor bribery, and the government agreed to dismiss his felony indictment and to grant him immunity from prosecution for certain bankruptcy matters. Fiske then filed a superseding information alleging that Fitzhugh violated 18 U.S.C. § 215 by providing valuable services to Hale, a financial institution officer, to induce CMS loans to Townsend. At the change of plea hearing, Fitzhugh admitted knowingly participating in sham transactions described in the information. After a thorough Rule

colloquy, the district court found Fitzhugh "fully competent and capable of entering an informed plea" and accepted his guilty plea.

At Fitzhugh's sentencing hearing on January 3, 1995, the district court determined that his guidelines range exceeded the statutory maximum of one year in prison for a misdemeanor offense. The court deferred ruling on the final sentence pending a report on Fitzhugh's heart condition. Fitzhugh first moved to withdraw his guilty plea on April 6, 1995, the day before the court was to rule on his confinement. He alleged that his plea was involuntary because recent medical examinations demonstrated that his memory had been clouded by a 99% blockage in his carotid artery, and because the prosecution had withheld exculpatory evidence. After a hearing, the district court denied this motion, commenting:

> I think we have here a classic case of post plea regret [except that] usually such a regret is manifested a lot closer in time to the plea than we have here.
>
> I have to note that Mr. Fitzhugh's memory loss is selective, at best. He remembers with rather keen detail things that would appear to be helpful to his claim now, and then claims loss of memory due to his condition and the pressure of the day on the more troublesome areas . . . . I think there's no basis in law or in right for Mr. Fitzhugh now at this point to say . . . he was not competent [and] should be able to withdraw his plea.

The court sentenced Fitzhugh to one year in prison. Fitzhugh appealed, and we granted his motion for release pending appeal.

## II. Guilty Plea Withdrawal.

"The plea of guilty is a solemn act not to be disregarded because of belated misgivings about [its] wisdom." United States v. Morrison, 967 F.2d 264, 268 (8th Cir. 1992) (citation omitted). Fed. R. Crim. P. 32(e) permits the withdrawal of a guilty plea "if

the defendant shows any fair and just reason."  We review the denial of a motion to withdraw for clear error, assessing:

> (1) whether defendant established a fair and just reason to withdraw his plea; (2) whether defendant asserts his legal innocence of the charge; (3) the length of time between the guilty plea and the motion to withdraw; and (4) if the defendant established a fair and just reason for withdrawal, whether the government would be prejudiced.

United States v. Boone, 869 F.2d 1089, 1091-92 (8th Cir.), cert. denied, 493 U.S. 822 (1989).  Fitzhugh waited over nine months to move to withdraw, and he does not assert his innocence, so his reasons to withdraw "must have considerably more force."  Fed. R. Crim. P. 32(e) advisory committee notes to 1983 amendment, quoting United States v. Barker, 514 F.2d 208 (D.C. Cir.), cert. denied, 421 U.S. 1013 (1975).

A. Fitzhugh's Physical Condition.  At the plea hearing, after the court determined that Fitzhugh was competent and represented by competent counsel, Fitzhugh admitted knowingly committing the crime alleged in the superseding information.  He now contends that his heart condition impaired his memory and thus rendered this guilty plea involuntary.  He presented no medical testimony supporting this claim, only doctors' letters stating that any loss of memory "possibly" resulted from the blocked artery.

The district court found this medical evidence "very uncertain" and Fitzhugh's testimony about his selective memory loss not credible.  The court then compared that weak showing with Fitzhugh's lengthy and cogent colloquy at the plea hearing, when he advised the court that he understood the charge, was competent to plead, and was voluntarily changing his plea to guilty, and when his attorney also expressed no doubt about Fitzhugh's competency to plead guilty.  "Solemn declarations in open court carry a strong presumption of verity."  Blackledge v. Allison, 431 U.S. 63, 74

(1977).  The district court did not err in denying the motion to withdraw on this ground.  See United States v. McNeely, 20 F.3d 886, 888 (8th Cir.), cert. denied, 115 S. Ct. 171 (1994); United States v. Vaughan, 13 F.3d 1186, 1187 (8th Cir.), cert. denied, 114 S. Ct. 1858 (1994).

B. The Alleged Exculpatory Evidence.  Fitzhugh next argues that the prosecution failed to disclose allegedly exculpatory evidence -- a 1990 Rose Law Firm billing statement, evidence that Webster Hubbell had represented Harry Townsend and his mother before joining the Department of Justice, a $250,000 settlement payment by Prudential-Bache to Townsend's mother, and "testimony of witnesses in grand jury proceedings."  In a largely unintelligible argument, Fitzhugh apparently contends that he should be allowed to withdraw his guilty plea because he "now is able to defend his indictment and . . . believes he was framed and was indicted in an attempt to become a political scapegoat for other politically influential persons."

The record reveals that Fitzhugh knew or had access to most if not all of this information before he pleaded guilty.  Moreover, Fitzhugh cannot explain how this evidence tends to show he was "framed," either for the crime for which he was indicted, or the crime to which he pleaded guilty.  Thus, he has failed to prove breach of the prosecution's duty to disclose.  Finally, we fail to see how any of this information would have rationally affected his decision to plead guilty.  See White v. United States, 858 F.2d 416, 424 (8th Cir. 1988), cert. denied, 489 U.S. 1029 (1989).  This argument does not establish a fair and just reason to withdraw the plea; if anything, it tends to confirm the district court's conclusion that "we have here a classic case of post plea regret."

C. Conclusion.  Fitzhugh on appeal suggests several other reasons his guilty plea was involuntary.  All are plainly without

-5-

merit.  The district court committed no clear error in denying his motion to withdraw that plea.

### III. The Independent Counsel's Authority.

Soon after Independent Counsel Fiske obtained the superseding felony indictment, Fitzhugh moved to dismiss that indictment, alleging (i) that the Attorney General had no statutory authority to appoint Fiske, and (ii) that in any event Fiske had exceeded the scope of his appointed authority in prosecuting this case.[1]  The district court denied that motion, and Fitzhugh subsequently pleaded guilty to the superseding information issued by Independent Counsel Fiske in accordance with Fitzhugh's plea agreement. Fitzhugh did not again raise the question of Fiske's authority until the case was pending on appeal.  We agree with the government that his valid guilty plea waived these issues.

A guilty plea waives all but "jurisdictional" defects.  See, e.g., Camp v. United States, 587 F.2d 397, 399 (8th Cir. 1978).  One type of jurisdictional defect arises when it appears on the face of the record that the government lacked power to prosecute the defendant, for example, because the charge is barred by the Double Jeopardy Clause.  See Vaughan, 13 F.3d at 1188, construing Blackledge v. Perry, 417 U.S. 21 (1974), and United States v. Broce, 488 U.S. 563, 575 (1989).  Another type of jurisdictional defect occurs when "the indictment on its face fails to state an offense."  O'Leary v. United States, 856 F.2d 1142, 1143 (8th Cir. 1988); see United States v. Caperell, 938 F.2d 975, 977-78 (9th Cir. 1991).

---

[1]On August 5, 1994, Kenneth W. Starr was appointed Independent Counsel pursuant to 28 U.S.C. § 593(b), the newly reenacted Ethics in Government Act.  Starr assumed responsibility for prosecuting Fitzhugh, who was then awaiting completion of sentencing.  Fitzhugh does not separately challenge Starr's authority.

Fitzhugh does not challenge the government's power to prosecute him for misdemeanor bribery, nor does he allege that the superseding information failed to state that offense. He argues, in essence, that the Attorney General sent the wrong prosecutor to charge him with this crime. Of course, deciding what agent should represent the United States in a criminal prosecution is primarily a question for the Executive Branch. To the extent that the Attorney General's answer to that question is subject to judicial supervision or control, the court's power to regulate the attorneys who appear before it does not affect the court's jurisdiction over the underlying prosecution. Thus, alleged defects of this kind have consistently been treated as non-jurisdictional and therefore subject to waiver, either by a valid guilty plea or by the absence of a timely objection. See United States v. Easton, 937 F.2d 160, 162 (5th Cir. 1991), cert. denied, 502 U.S. 1045 (1992) (claim that disqualified United States Attorney authorized the indictment waived by guilty plea); King v. United States, 279 F. 103, 104 (5th Cir. 1922) (claim that unauthorized prosecutor signed the indictment waived by no timely objection); United States v. Solomon, 216 F. Supp. 835, 837-38 (S.D.N.Y. 1963) (claim of unconstitutionally appointed prosecutor waived by no timely objection). Likewise, we conclude that Fitzhugh's challenge to Independent Counsel Fiske's authority raises a non-jurisdictional defect that was waived by Fitzhugh's guilty plea.

In addition, Fitzhugh's guilty plea waived his belated claim that he is the victim of selective prosecution. This claim was first raised after Fitzhugh pleaded guilty. It is based on facts entirely outside the record and is therefore barred by the guilty plea. See Vaughan, 13 F.3d at 1188; United States v. Cortez, 973 F.2d 764, 766-67 (9th Cir. 1992).

# IV. Sentencing Issues.

Fitzhugh argues that the district court committed two sentencing errors -- (i) improperly increasing his base offense level based upon the face amount of a loan he fraudulently obtained for client Townsend, and (ii) improperly assessing a two-level enhancement for abuse of his public trust as an attorney. We review sentencing findings for clear error and give due deference to the district court's application of the Guidelines to the facts. United States v. Brelsford, 982 F.2d 269, 271 (8th Cir. 1992).

A. Commercial Bribery Base Offense Level. Fitzhugh's commercial bribery offense is governed by U.S.S.G. § 2B4.1. The base offense level is eight. § 2B4.1(a). However, that level must be increased based upon the value of the bribe or the value of the improper benefit to be conferred by the bribe, "whichever is greater." § 2B4.1, comment. (backg'd). If the value of the bribe or improper benefit exceeds $2,000, § 2B4.1(1)(b) incorporates by reference the increases found in the table in § 2F1.1(b)(1), which governs sentencings for fraud offenses.

Fitzhugh's presentence investigation report recommended that his improper benefit increase be based upon three financing transactions totaling $687,500. The district court found that Fitzhugh was not involved in two of those transactions. It then increased his base offense level by six levels, based upon the face amount of a $137,500 loan by CMS to Fitzhugh's client, Townsend, obtained through the bribing of Hale. See U.S.S.G. App. C, amend. 154 (§ 2F1.1 table prior to Nov. 1989). On appeal, Fitzhugh argues that this increase was clear error because the loan to Townsend was over-secured, so there was no risk of loss to CMS.

Fitzhugh's focus on risk of loss is incorrect. The victim's loss is the proper focus for fraud offenses, those to which the table in § 2F1.1(b)(1) directly applies. The severity of a bribery

offense, on the other hand, is measured by the amount of the improper benefit conferred in return for the bribe (or by the amount of the bribe, if greater). Thus, § 2B4.1(b)(1) recognizes the possibility that, when a bank official is bribed to obtain a loan, the improper benefit to the person making the bribe may be greater than any resulting loss incurred by the lending institution.

Though the district court properly focused on the benefit conferred by Fitzhugh's bribery offense, it nevertheless misapplied § 2B4.1(b)(1). That provision requires finding "the <u>value</u> of the improper benefit to be conferred." (Emphasis added.) The value of a transaction is often quite different than the face amount of that transaction. For example, in <u>United States v. Landers</u>, 68 F.3d 882, 884 (5th Cir. 1995), the court held that the value of a $1,000,000 contract obtained by bribery was the contractor's $204,000 gross profit. Similarly, the value of a loan to the borrower will often be less than the face amount of the loan. When a loan is obtained by bribes, it is likely to be at favorable terms, in which case its value will typically be the difference between the actual cost of the loan, and the cost of the same loan at fair market terms and conditions.[2] That the Sentencing Commission intended to incorporate these basic economic realities into § 2B4.1 is confirmed by the background commentary:

> Thus, for example, if a bank officer agreed to the offer of a $25,000 bribe to approve a $250,000 loan under terms for which the applicant would not otherwise qualify, the court, in increasing the offense level, would use the greater of the $25,000 bribe, <u>and the savings in interest</u>

---

[2]On the other hand, the value of the loan <u>would</u> equal the face amount of the loan if the borrower's promise to repay were worthless or unenforceable, and it <u>might</u> equal the face amount of the loan if the borrower, while able to and intending to repay, could not have obtained the loan at any price absent the bribe. We leave all such valuation questions to the district court on remand.

> over the life of the loan compared with the alternative loan
> terms.

(Emphasis added.)  See also U.S.S.G. § 2C1.1, comment. (n.2) (governing bribery of public officials); United States v. Patel, 32 F.3d 340, 345 (8th Cir. 1994) (increase under § 2C1.1 based upon amount of the $50,000 bribe, not the $600,000 amount bid for government property).

In this case, the scanty evidence of record regarding the loan to Townsend suggests that its value, properly calculated, would be far less than its face amount of $137,500.  Neither the probation officer nor the government nor the district court made any attempt to calculate the value of this loan for purposes of § 2B4.1(b)(1), and the six-level increase that resulted from this error may have substantially affected Fitzhugh's sentence.  Accordingly, we must remand for resentencing.

B. Abuse of Trust.  U.S.S.G. § 3B1.3 requires a two-level enhancement if the defendant "abused a position of public or private trust . . . in a manner that significantly facilitated the commission or concealment of the offense."  A lawyer's embezzlement of client funds is one example of such an abuse of trust.  See § 3B1.3, comment. (n.1).  Fitzhugh argues that the district court erred in imposing this enhancement because he "did not abuse any trust but instead performed legal services at his client's direction."  We disagree.

A licensed Arkansas attorney holds a position of public trust.  United States v. Post, 25 F.3d 599, 600 (8th Cir. 1994).  The § 3B1.3 enhancement applies if Fitzhugh's abuse of this position "contributed in some significant way to facilitating the commission or concealment of the offense."  § 3B1.3, comment. (n.1).  Fitzhugh admitted at the change of plea hearing that he allowed David Hale to "pass money through [my client's corporations] on the promise of

getting loans for my clients and also charging Harry Townsend fees for doing it, and I did it at their direction knowing that it was just pass-through loans." The Model Rules of Professional Conduct, adopted in Arkansas, state that a "lawyer shall not . . . assist a client in conduct that the lawyer knows is criminal or fraudulent," including "participat[ion] in a sham transaction." Rule 1.2(d) & cmt. As in Post, where the attorney defendant filed false insurance claims on behalf of his clients, Fitzhugh's status as an attorney "shrouded the [transactions] with a presumption of regularity, and thus contributed significantly to facilitating the commission of the fraud," and his offense "harmed the legal system he was sworn to uphold." 25 F.3d at 601. In these circumstances, the district court did not err in imposing the § 3B1.3 enhancement.

For the foregoing reasons, Fitzhugh's conviction is affirmed, the judgment of the district court is reversed, and the case is remanded for resentencing in accordance with this opinion. Appellant's motion to supplement the record is denied.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.

-11-