# United States Court of Appeals
**FOR THE EIGHTH CIRCUIT**

———————

No. 06-3818

———————

United States of America,                 *

                                  *

        Plaintiff - Appellee,      *

                                  *   Appeal from the United States

     v.                           *   District Court for the

                                  *   District of Minnesota.

Guillermo C. Gonzalez,       *

                                  *

        Defendant - Appellant.   *

———————

Submitted: June 13, 2007
Filed: July 30, 2007

———————

Before BYE, RILEY, and BENTON, Circuit Judges.

———————

BYE, Circuit Judge.

      Guillermo C. Gonzalez was convicted of escape under 18 U.S.C. § 751 twenty years after he walked away from a prison camp in Duluth, Minnesota, and fled to the Dominican Republic. On appeal, Gonzalez challenges the district court's[1] refusal to submit three proposed instructions to the jury regarding the application of the statute of limitations under 18 U.S.C. § 3282. We affirm.

---

[1]The Honorable Joan N. Ericksen, United States District Judge for the District of Minnesota.

Gonzalez, born a Dominican citizen, became a naturalized United States citizen between 1961 and 1962. In 1985, he was convicted of bank larceny in the Southern District of New York. Prior to his conviction, while out on bond, he impermissibly returned to the Dominican Republic. He was re-arrested and ultimately sentenced to eight years of imprisonment—three years for his failure to appear and five years for the underlying offense. On October 17, 1985, he began his sentence at the Federal Correctional Institution in Danbury, Connecticut, and on June 1, 1986, was transferred to the Federal Prison Camp in Duluth, Minnesota. On June 27, 1985, after learning his mother was ill, he walked away from the camp and fled to the Dominican Republic.

Gonzalez testified, once back in the Dominican Republic, he contacted his attorney, Morel Cerda. He claims Cerda "notified the American Embassy that [he] was in the Dominican Republic, and that [he] wanted to have [his] case heard in the Dominican Court," because he had "lost all faith in the American justice system." According to Gonzalez, the embassy arranged a meeting between Cerda and two unnamed FBI agents at his attorney's office. While not present at the meeting, Gonzalez testified he believed, after talking with Cerda about the meeting, he would not be arrested so long as he stayed in the Dominican Republic.

Over the next twenty years, Gonzalez, a Vietnam War veteran, returned periodically to the United States to receive medical treatment at Veterans Administration hospitals. During those trips, he used his name and naturalization papers to cross the border into the United States. For a short period of time, he was in Atlanta, Georgia, to receive medical treatment. In Atlanta, he obtained a job using his name and Social Security number. In 2005, upon returning to the Dominican Republic, he went to the American Embassy to enroll his children as United States citizens. He was asked to return multiple times to fill out forms. During his final visit to the embassy on November 2, 2005, nearly twenty years after his escape from federal custody, he was arrested.

On November 10, 2005, Gonzalez was charged with escape in violation of 18 U.S.C. § 751. At trial, he sought three jury instructions supporting a statute of limitations defense. The district court rejected these instructions, concluding Gonzalez had submitted insufficient factual support for the defense. The jury returned a guilty verdict, and on October 30, 2006, he was sentenced to one year and one day imprisonment, to be served consecutively with the remainder of his previously imposed sentences. On appeal, he argues the district court erred by failing to instruct the jury on the scope of escape and the application of the five-year statute of limitations under 18 U.S.C. § 3282.

II

"Whether there is sufficient evidence to support a decision to submit an instruction to the jury is a question of law to be determined de novo by the court." United States v. Gamboa, 439 F.3d 796, 816 (8th Cir. 2006). "[T]he trial court has broad discretion in choosing the form and language of jury instructions." United States v. Westbrook, 896 F.2d 330, 337 (8th Cir. 1990). A defendant, however, "has a right to have an instruction read reflecting his or her theory of the case, provided that the request is made in time and that the instruction is supported by the evidence and correctly states the law." Id. When an instruction concerns an available defense, the defendant must show "an underlying evidentiary foundation as to each element of the defense, regardless of how weak, inconsistent or dubious the evidence on a given point may seem." United States v. Kabat, 797 F.2d 580, 590-91 (8th Cir. 1986) (internal quotation marks omitted). "We have never held, however, that a defense must be submitted to the jury even when it cannot be said that a reasonable person might conclude the evidence supports the defendant's position." Id. at 591 (internal quotations marks omitted).

Gonzalez argues, based on the evidence presented at trial, he was entitled to have the jury instructed regarding the statute of limitations. We disagree. This case

presents an issue of first impression for the court. We have never before determined what constitutes sufficient evidence to support a statute of limitations instruction in an escape case. Not surprisingly, there is very little case law on the crime of escape. This is likely because, to prove a violation of 18 U.S.C. § 751(a), the government need only show "an escapee knew his actions would result in his leaving physical confinement without permission." United States v. Bailey, 444 U.S. 394, 408 (1980). There is even less case law regarding potential affirmative defenses to escape.[2] As for the statute of limitations, we have found no cases addressing the application of the five-year statute of limitations under 18 U.S.C. § 3282 in escape cases. This is also unsurprising as Congress has specifically indicated: "No statute of limitations shall extend to any person fleeing from justice." 18 U.S.C. § 3290; see also Bailey, 444 U.S. at 414 n.10 (citing § 3290 and noting "[b]ecause an escaped prisoner is, by definition, a fugitive from justice, the statute of limitations normally applicable to federal offenses would be tolled while he remained at large"). It is difficult to envision a factual scenario where an escapee is not, as a matter of law, fleeing from justice. For the reasons discussed below, even if an escapee could assert such a defense, Gonzalez failed to submit sufficient evidence at trial to support the defense.

Typically, "[a]n offense is committed when it is completed, that is, when each element of that offense has occurred." United States v. Yashar, 166 F.3d 873, 875 (7th Cir. 1999) (internal citation omitted). There is a recognized exception to this rule for so-called continuing offenses. Id. "For those crimes, the statute of limitations does not begin to run when all elements are first present, but rather begins when the offense expires." Id. at 875-76. The Supreme Court in Bailey unequivocally defined escape as a continuing offense:

---

[2]In Bailey, although the Supreme Court acknowledged an escapee might assert a duress or necessity defense to escape, it also held this defense requires "a bona fide effort to surrender or return to custody as soon as the claimed duress or necessity [loses] its coercive force." Bailey, 444 U.S. at 415.

> [W]e think it clear beyond peradventure that escape from federal custody as defined in [18 U.S.C.] § 751(a) is a continuing offense and that an escapee can be held liable for failure to return to custody as well as for his initial departure. Given the continuing threat to society posed by an escaped prisoner, the nature of the crime involved is such that Congress must assuredly have intended that it be treated as a continuing one.

Id. at 413. The Bailey Court went on to dictate "the statute of limitations is tolled for the period that the escapee remains at large." Id. at 414. See also United States v. Elliott, 467 F.3d 688, 690 (7th Cir. 2006) ("Likewise the crime of escape, complete when the prisoner leaves custody, continues until he turns himself in or is nabbed.").

Here, Gonzalez argues he presented enough evidence to support his proposed jury instructions on the statute of limitations. We disagree. Although Bailey concerns a defendant's assertion of a necessity or duress defense rather than a statute of limitations defense, it is instructive. The Bailey Court explicitly included the failure to return to custody as part of the escape offense, id. at 413, and noted the statute of limitations is tolled while an escapee "remains at large." Id. at 414. It would follow that to end the crime of escape and trigger the statute of limitations, an escapee must return to custody, or, at the very least, must make a bona fide attempt to surrender.[3] See United States v. Gonsalves, 675 F.2d 1050, 1055 (9th Cir. 1982) (holding the

---

[3]Gonzalez attempts to analogize the crime of escape with the continuing crime of conspiracy. We have held the crime of conspiracy expires, and the statute of limitations is triggered, if and when the conspirator withdraws from the conspiracy. United States v. Grimmett, 236 F.3d 452, 453 (8th Cir. 2001). Even if we accept Gonzalez's analogy, however, his conduct does not meet the high standard for withdrawal. We have held withdrawal from conspiracy requires distinct affirmative action to defeat the conspiracy. Id. at 456. Here, Gonzalez did not affirmatively act to terminate or defeat his escape. Unlike the conspirator who ostracizes her former compatriots, goes to law enforcement, and fully confesses and cooperates, Gonzalez never surrendered or put himself at risk of recapture.

statute of limitations period under 18 U.S.C. § 3282 is not tolled when a fugitive "is making a good faith effort to surrender").

At trial, Gonzalez testified, after he escaped and fled to the Dominican Republic, his attorney notified the American Embassy about his presence in the Dominican Republic, and further met with two unnamed FBI agents who allegedly told the attorney that Gonzalez would not be arrested so long as he remained in the Dominican Republic. Any issues of hearsay aside, we cannot conclude this constitutes a bona fide attempt to surrender. Even if we assume Gonzalez's testimony is true, it establishes only that he contacted United States officials through an intermediary. There is no evidence he personally met with officials to arrange his surrender. Because he never presented himself to officials, he was never at any real risk of recapture. One wonders what his response would have been had the FBI agents directed him, via Cerda, to report to the American Embassy for extradition. Furthermore, the <u>Bailey</u> Court cautioned "[v]ague and necessarily self-serving statements of defendants or witnesses as to future good intentions or ambiguous conduct" are insufficient to support a finding the defendant made a bona fide effort to surrender. <u>Bailey</u>, 444 U.S. at 415. The testimony presented here seems precisely of the type the <u>Bailey</u> Court cautioned against.

Gonzalez also claims his several trips into United States to receive medical treatment, because he presented his identification documents to border officials, also constitute bona fide attempts to return to custody sufficient to trigger the statute of limitations. We disagree and hold such trips are insufficient to constitute attempts to surrender. There is no evidence he told border officials he was on the lam. In fact, there is no evidence he told anyone he encountered in the United States about his status. By his testimony, he engaged in no affirmative conduct other than presenting his passport and papers to border officials. While Gonzalez successfully entered the United States without arrest does not indicate he was attempting to surrender or had any intent to return to federal custody.

On these facts, we conclude Gonzalez did not return to custody or make a bona fide attempt to surrender. He presented no evidence he terminated his escape, thus triggering the statute of limitations. As such, the district court was under no obligation to submit to the jury his proposed instructions on the statute of limitations.

## III

For the foregoing reasons, we affirm the district court.

_____