# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 06-4007

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the District |
| | * | of Nebraska. |
| Russell Hoffmann, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: September 25, 2007
Filed: February 25, 2009

_____

Before BYE, BENTON, and SHEPHERD, Circuit Judges.

_____

BENTON, Circuit Judge.

A jury convicted Russell D. Hoffmann of one count of giving a gratuity, 18 U.S.C. § 201(c)(1)(A). Hoffmann appeals. Jurisdiction being proper under 28 U.S.C. § 1291, this court affirms.

I.

Hoffmann was a vice president at Surdex Corporation, a company providing aerial photography and mapping services. He was the project manager for a two-year contract (the "1996 contract") awarded to Surdex by the Omaha Division of the

United States Army Corps of Engineers in May 1996. William F. Schwening was the Corps' contact person on the contract.

Under the Federal Acquisitions Regulations (FAR), contracting agencies must prepare a performance evaluation report (PER) for each contract over $100,000. *See* FAR 42.1502. PERs completed by the Corps are known as ACASS ratings.[1] Within 60 days after the completion of the contract, the Corps must file an ACASS rating prepared by the "engineers, architects and other technical personnel who reviewed and accepted the [contractor's] work." Army Corps' Engineer Pamphlet EP 715-1-7 at 6.4(c)(1)-(2); *see* FAR 36.604(a). Agencies consider a contractor's prior ACASS rating before filling an open contract.

Michael Byrne, the acting chief of surveys and mapping for the Omaha Corps, completed the ACASS rating for Surdex's 1996 contract. Surdex received an "outstanding" rating, the highest possible.

In April 1999, the Corps awarded Surdex a follow-on contract (the "1999 contract"). During this contract, the Corps issued, and Surdex performed, over 30 task orders. The contract ended in April 2002. Schwening was responsible to prepare the ACASS rating.

Over the course of the 1996 and 1999 contracts, Hoffmann and Schwening had frequent professional and social contact. The federal indictment alleged that Hoffmann gave Schwening four gifts because of official acts Schwening performed or would perform: (1) a golf outing on July 1, 2003; (2) a golf outing on July 2, 2003; (3) a Dell Inspiron 5100 computer in November 2003; and (4) a Titleist driver and a

---

[1]ACASS is the abbreviation for the system in which architect-engineer contract reports are stored: Architect-Engineer Contract Administration Support Systems.

three-wood (golf clubs) in October 2003.[2]  Schwening and Hoffmann pled not guilty to all charges.

At trial, the government presented a series of emails between Hoffmann and Schwening discussing the ACASS rating for the 1999 contract, and the golf clubs given to Schwening.

On January 28, 2003, Hoffmann emailed Schwening seeking an "ACASS Rating" for the 1999 contract:

Bill,

Now that our contract is over, can we get another ACASS rating from you?  I downloaded the ACASS for windows program to peruse but couldn't get anywhere since I did not have authorized access. . . . The comments are exactly the same as last time so please read them and decide if you want to change anything. . . . I guess outstanding is still the highest they will allow you to go and that is fine with me.  I don't want to influence you whatsoever in your evaluation (you know I would NEVER do that) but if you could do this sometime soon and let me know what you are rating us I would certainly appreciate it.  if there is anything I can do from my end to help please let me know. . . .

I owe you one (or more).

Russ

The email attached a duplicate of Byrne's comments on the 1996 contract.

---

[2]The parties stipulated that the value of the gifts was between $5,000 and $10,000.  Hoffmann testified that he used a corporate credit cart or sought reimbursement for all gifts purchased for Schwening.

On July 31, 2003, Hoffmann again emailed Schwening regarding an "ACASS Rating":

> Bill,
>
> The second word file are the remarks "you" made for our first '96 contract. You may want to revise these comments or if you want, we can take a stab at it . . . . Then you can "edit" them before submitting into the ACASS system. The link below takes you to the Portland ACASS home page site.
>
> . . . .
>
> Let me know what I can do.
>
> Russ

The email attached a copy of Byrne's comments on the 1996 contract and a list of the delivery orders from the 1999 contract.

On August 14, 2003, Hoffmann again emailed Schwening regarding "ACASS":

> Bill,
>
> Check out these remarks and if all is well please incorporate into the tail end of the ACASS report you submit.
>
> If you have any questions or comments let me know.
>
> Russ
>
> P.S. Call me about questions on long range EDM equipment

The email attachment contained comments authored by Surdex to be incorporated into the ACASS report.

On September 22, 2003, Hoffmann emailed Schwening including small talk about golf and an individual who formerly commanded the Omaha Corps. The email also inquired about the potential use of Surdex photography on a Fort Carson project. Schwening replied with this email:

> yea I know the guy pretty well and we played together out here the last year of his command   Mike Muleners that is   He's like a two handicap or scrath [sic]. .
>
> no clubs yet??
>
> the photography could be used for update as well as orthos. .

The next day, Hoffmann ordered the clubs. Over the following weeks, Schwening sent several emails to Hoffmann inquiring about the status of the clubs. In late October, the clubs were delivered. On October 31, 2003, Schwening sent an email to Hoffmann stating, "hey buddy do you need ANYTHING. . I hit the titelist last night straight outta the box   awesome."

By November 10, 2004, Schwening still had not completed the ACASS rating for Surdex. Hoffmann then sent this email:

> Subject: FW: ACASS
>
> Bill,
>
> With the St Louis Corps announcement coming out it sure would be nice to have our last contact's [sic] evaluation in the ACASS system. Oh, by the way, how is your golf game since you got those new woods?
>
> Russ

On November 16, 2004, the U.S. Department of Defense Criminal Investigative Service began investigating the relationship between Schwening and Hoffmann. Schwening never submitted an ACASS rating for the 1999 contract.

Hoffmann testified at trial that he bought the clubs "to treat a friend" and was not motivated by a desire to get anything from Schwening. However, Hoffmann viewed the gift as a company expense, and purchased the clubs with Surdex's corporate credit card.

At the instruction conference, Hoffmann's counsel requested a theory-of-defense instruction providing that Hoffmann had given the golf clubs out of friendship and to obtain goodwill. At the government's request, the court inserted the word "solely." The case was submitted to the jury with the following instruction:

> Mr. Hoffmann and Mr. Schwening, moreover, contend that each is not guilty of the crimes charged because the gifts given or received were not given or received because of or for any official acts or acts. Mr. Hoffmann and Mr. Schwening contend that the gifts were given or received *solely* because of reasons of goodwill and friendship. The law is written to subject to criminal punishment only those people who give or receive things of value because of or for an official act.

**Jury Instruction 27** (emphasis added).

The jury returned a verdict acquitting Schwening on all counts against him (Counts 1-5), and acquitting Hoffmann on Counts 6-8 (which involved the two golf outings and computer). The jury convicted Hoffman on Count 9 (which involved the Titleist driver and three-wood). After denying Hoffmann's motion for a new trial, the district court entered a final judgment, including a sentence of three years probation and a $5,000 fine. Hoffmann appeals, arguing the court erred in its instructions to the jury and that the judgment is not supported by sufficient evidence.

## II.

Hoffmann contends the district court erred in instructing the jury as to his theory-of-defense. This court reviews a district court's refusal to give a particularly worded theory-of-defense instruction for an abuse of discretion. *United States v. McCourt*, 468 F.3d 1088, 1094 (8th Cir. 2006); *see United States v. Johnson*, 278 F.3d 749, 751 (8th Cir. 2002) ("The district court has broad discretion in formulating jury instructions.").

A defendant "has a right to have an instruction read reflecting his or her theory of the case, provided that the request is made in time and that the instruction is supported by the evidence and correctly states the law." *United States v. Gonzalez*, 495 F.3d 577, 579 (8th Cir. 2007), *quoting United States v. Westbrook*, 896 F.2d 330, 337 (8th Cir. 1990). "A defendant is not entitled to a particularly worded instruction where the instructions given adequately and correctly cover the substance of the requested instruction." *United States v. Wright*, 246 F.3d 1123, 1128 (8th Cir. 2001), *quoting United States v. Kouba*, 822 F.2d 768, 771 (8th Cir. 1987); *see United States v. Serrano-Lopez*, 366 F.3d 628, 636-37 (8th Cir. 2004).

Hoffmann argues that the court improperly included the word "solely" into Instruction 27. In *United States v. Sun-Diamond Growers of California*, 526 U.S. 398 (1999), the Supreme Court held that the illegal gratuity statute requires the government to establish a reward given for or because of "some particular official act [to] be identified and proved." 526 U.S. at 406. Instruction 27 correctly notes Hoffmann's contention that he gave the golf clubs because of reasons of goodwill and friendship, motives that do not violate § 201(c). However, Instruction 27 implies that if Hoffmann did not give the gifts *solely* because of goodwill and friendship, he necessarily gave them for or because of an official act. This negated the government's burden. Because the instruction erroneously expanded the gratuity statute, it was improper.

Although the instruction misstates the law, this court concludes that the jury instructions, taken as a whole, were accurate. *See* **United States v. Bishop**, 825 F.2d 1278, 1283 (8th Cir. 1987) (reviewing jury instruction to determine "whether the instructions, when taken as a whole, adequately advise the jury of the essential elements of the offenses charged and the burden of proof required of the government"), *citing* **United States v. Sherer**, 653 F.2d 334, 337 (8th Cir. 1981).

Another instruction, Instruction 12, correctly charges the essential elements the government had to prove beyond a reasonable doubt for the jury to find Hoffmann guilty under the illegal gratuity statute. *See* **United States v. Voss**, 787 F.2d 393, 398 (8th Cir. 1986) ("A jury verdict, if based on an instruction that allows it to convict without properly finding the facts supporting each element of the crime, is error."). With respect to Count 9, Instruction 12 provides the government had to prove: (1) Hoffmann "gave things of value not authorized by law to William Schwening, namely . . . [o]n October of 2003, a Titleist driver and 3 wood"; (2) Hoffmann "did so because of an official act performed or to be performed by William Schwening"; and (3) at the time, "William Schwening was an employee of the United States Army Corps of Engineers."

Instruction 18 accurately explains the government's burden to establish a link between the golf clubs and an official act. Specifically, Instruction 18 provides:

> To prove the giving or receipt of an illegal gratuity, the government must prove a link between a thing of value conferred upon a public official and an official act for or because of which it was given. However, it is not necessary for the government to prove that the gratuity was given or received in exchange for the official act. An illegal gratuity may constitute merely a reward for some future act that the public official will take, and may have determined to take, or for a past act that he has already taken.

These instructions properly advised the jury of the government's burden of proof. This court concludes that the jury instructions, taken as a whole, adequately state the law.

## III.

Hoffmann contends the government presented insufficient evidence that he intended to give the golf clubs as an illegal gratuity because: 1) he never reasonably believed that Schwening committed to providing an ACASS rating; 2) the November 2004 email is too remote; and 3) the evidence is inconclusive as to guilt or innocence. This court reviews an appeal based on the sufficiency of evidence de novo, viewing the evidence in a "'light most favorable to the government, resolving conflicts in the government's favor, and accepting all reasonable inferences that support the verdict.'" *United States v. Hamilton*, 332 F.3d 1144, 1148 (8th Cir. 2003), *quoting United States v. Washington*, 318 F.3d 845, 852 (8th Cir. 2003). This court will reverse a jury's decision only if "no reasonable jury could have found the accused guilty beyond a reasonable doubt." *United States v. Funchess*, 422 F.3d 698, 701 (8th Cir. 2005), *quoting United States v. Espino*, 317 F.3d 788, 792 (8th Cir. 2003).

The government alleges that Hoffmann gave golf clubs to Schwening in exchange for a future act – a favorable ACASS rating.[3] The illegal gratuity statute provides:

---

[3]On appeal, the government argues: "The more accurate view of the evidence is that the golf clubs, along with all the other gifts given to Schwening, were provided for, or because of, a whole range of official acts performed or to be performed by Schwening." In addition to preparing favorable ACASS ratings, those official acts include: recommending Surdex when sitting on selection boards, sharing confidential information, and providing highly favorable reviews of the company's performance to other agencies. This court concludes that there is insufficient evidence connecting these acts to the golf clubs at issue.

> [W]hoever . . . otherwise than as provided by law for the proper discharge of official duty . . . directly or indirectly gives, offers or promises anything of value to any public official, former public official, or person selected to be a public official, for or because of any official act performed or *to be performed* by such public official, former public official, or person selected to be a public official . . . shall be fined under this title or imprisoned for not more than two years, or both.

**18 U.S.C. § 201(c)(1)(A)** (emphasis added). An "official act" is "any decision or action on any question, matter, cause, suit, proceeding or controversy, which may at any time be pending, or which may by law be brought before any public official, in such official's official capacity, or in such official's place of trust or profit." ***Id***. § 201(a)(3). *Sun-Diamond* requires that "the Government must prove a link between a thing of value conferred upon a public official and a specific 'official act' for or because of which it was given." 526 U.S. at 414.

Hoffmann argues that the government's evidence is insufficient because he never reasonably believed that Schwening would provide an ACASS rating, and Schwening never did so. This court has never interpreted § 201(c)(1)(A) to require a "reasonable belief" element. See ***United States v. Patel***, 32 F.3d 340, 344-45 (8th Cir. 1994) ("[T]he government must prove, beyond a reasonable doubt, that the defendant intended to reward [the official] for past action or action [the official] was already committed to take."). This court can locate only Fourth Circuit dicta proposing such a requirement. *Compare* ***United States v. Jennings***, 160 F.3d 1006, 1014 (4th Cir. 1998) ("[I]llegal gratuities . . . may be conveyed before the occurrence of the act (so long as the payor believes the official has already committed himself to the action"), *with* ***Sun-Diamond***, 526 U.S. at 405 ("An illegal gratuity . . . may constitute merely a reward for some future act that the public official will take (and may already have determined to take) or for a past act that he has already taken."); ***United States v. Schaffer***, 183 F.3d 833, 842 (D.C. Cir. 1999) ("[A] gratuity can be given with the intent to induce a public official to propose, take, or shy away from some future official act."); ***United States v. Agostino***, 132 F.3d 1183, 1195 (7th Cir.

1997) ("If . . . the payer intends the money as a reward for actions the payee has already taken, or is already committed to take, then the payment is a gratuity."), *citing United States v. Mariano*, 983 F.2d 1150, 1159 (1st Cir. 1993).

Hoffmann contends that the clubs were not a gratuity because Schwening never "committed" to issuing an ACASS rating. *See Patel*, 32 F.3d at 345. In *Patel*, the defendant challenged a jury instruction requiring the government to prove that he gave a reward "because [the official] performed an official act for [the defendant] or was going to perform an official act for him." *Id*. at 344-45. This court reasoned that the instruction satisfied the illegal gratuity statute because the defendant "intended to reward [the official] for . . . action [the official] was already committed to take." *Id*. This interpretation of § 201(c)(1)(A) is consistent with *Sun-Diamond*'s conclusion that an illegal gratuity is a reward "for some future act that the public official will take (and may already have determined to take)." 526 U.S. at 405. In this case, Schwening was responsible for issuing the ACASS rating for the 1999 contract, and Hoffmann repeatedly requested its submission. The government established that Schwening asked "no clubs yet??", and the next day Hoffmann purchased clubs for him. In November 2004, Hoffmann again asked for an ACASS rating from Schwening and wrote, "Oh, by the way, how is your golf game since you got those new woods?" A reasonable juror could conclude that Hoffmann gave the clubs intending to induce future performance; since the ACASS rating had not been issued by November 2004, the email could be viewed as a reminder of the gift to prod Schwening to take action.

Hoffmann next claims that the November 2004 email, sent thirteen months after the clubs were delivered to Schwening, is too remote to constitute sufficient evidence of his intent to provide an illegal gratuity. Hoffmann argues that § 201(c)(1)(A) requires temporal proximity between the illegal gratuity and the defendant's intent to influence an official act. *See Schaffer*, 183 F.3d at 843-45.[4] In that case, Schaffer,

---

[4]*But see United States v. Holck*, 398 F. Supp. 2d 338, 353-54 (E.D. Pa 2005) (stating that *Schaffer* was not decided on a "temporal attenuation" argument, but on

a Tyson Foods executive, gave the Secretary of Agriculture several $1,500 tickets to a presidential inaugural dinner. The tickets were purchased prior to the dinner, and given to the Secretary the day of the event. On the same day as the dinner, the Department of Agriculture became aware of an *E coli* outbreak. The government alleged that, under Schaffer's influence, the Secretary subsequently revised USDA policies in response to the outbreak. Schaffer was convicted for providing the tickets to the Secretary as an illegal gratuity. The district court granted a post-trial judgment of acquittal, and D.C. Circuit affirmed, concluding that there was insufficient evidence from which "the jury could infer that Schaffer and Tyson Foods were aware of the USDA's intent to act on the relevant issue at the time of the inaugural dinner." ***Id***. at 844 n.11.

*Schaffer* is inapposite. There, the intent to influence an official act did not motivate the gift because the USDA policy revisions were sought *after* the inaugural dinner. In the present case, Hoffmann asked Schwening for an ACASS rating in January, July, and August 2003, *before* he provided the clubs in October 2003. A reasonable juror could conclude that Hoffmann gave the clubs to Schwening with the requisite intent to reward future performance. The November 2004 email is not attenuated; it could be viewed as Hoffmann's reminder to Schwening to submit an ACASS rating.

Hoffmann finally argues that the November 2004 email is just as consistent with innocence as it is with guilt. Hoffmann testified that he bought the clubs "to treat a friend" and without a desire for anything in return. However, he also testified that the clubs were paid for by Surdex, as were all of Schwening's gifts. "The jury must resolve conflicts in testimony and judge the credibility of witnesses." ***United States v. Agofsky***, 20 F.3d 866, 869 (8th Cir. 1994), *citing **United States v. Nelson***, 984 F.2d 894, 898-99 (8th Cir. 1993). After reviewing the entire record, this court concludes

_____

the fact that the defendant had no "knowledge" that the gift was in exchange for an official act).

that a reasonable juror could conclude that the emails – together with the other evidence and testimony – were sufficient to find the accused guilty beyond a reasonable doubt.

## IV.

The judgment of the district court is affirmed.

BYE, Circuit Judge, dissenting.

I would reverse the judgment of the district court and direct the entry of a judgment of acquittal on Hoffman's conviction on one count of giving an illegal gratuity. I therefore respectfully dissent.

When we review the sufficiency of evidence supporting a conviction, the "conviction must be supported by substantial evidence and cannot be based on mere suspicion or possibility of guilt." United States v. Robinson, 782 F.2d 128, 129 (8th Cir. 1986). In addition:

> Where the government's evidence is equally strong to infer innocence as to infer guilt, the verdict must be one of not guilty and the court has a duty to direct an acquittal. In determining the strength of the evidence in a circumstantial case, it is the totality of the circumstances that must be weighed in making a decision on a motion for acquittal.

United States v. Davis, 103 F.3d 660, 667 (8th Cir. 1996) (internal citations and quotation marks omitted). In this case, the government contends Hoffman gave two golf clubs to Schwening in October 2003 in exchange for a future act that never occurred, a favorable ACASS rating. The evidence connecting the gift of golf clubs to a favorable ACASS rating was far from substantial.

It is a basic premise of criminal law that, for crimes requiring some state of mind in addition to an act, the physical conduct and the state of mind must concur. See, e.g., United States v. McDougald, 990 F.2d 259, 263 (6th Cir. 1993) (holding there was no showing the defendant purchased a car with knowledge that funds so used were drug money, as defendant's false statements over a month later, after he knew authorities thought "he had done something wrong," do not show state of mind at time of purchase, and thus requisite concurrence not established); United States v. Fairchild, 990 F.2d 1139, 1142 (9th Cir. 1993) ("[T]he criminal intent essential to the commission of the crime must exist at the time of the criminal act." (quoting United States v. Fox, 95 U.S. 670, 671 (1877))). Thus, it was incumbent upon the government to prove, by proof beyond a reasonable doubt, that when Hoffman gave Schwening the golf clubs in October 2003, it was his intent at that time to reward Schwening for a favorable ACASS rating that had yet to be performed.

Although the Court relies in part upon two emails in which *Schwening* discusses the golf clubs in connection with work, the only evidence indicative of *Hoffman's* intent is one email sent in November 2004, over a year after Hoffman gave Schwening the golf clubs. That email stated in its entirety:

> Bill,
>
> With the St Louis Corps announcement coming out it sure would be nice to have our last contact's (sic) evaluation in the ACASS system. Oh, by the way, how is your golf game since you got those new woods?
>
> Russ

The totality of the circumstances involved here included extensive testimony about the friendship between Hoffman and Schwening, which revolved in many respects around golf. It is not uncommon for long-term acquaintances to frequently talk about business and pleasure in the same conversation, and Hoffman and Schwening sometimes discussed both golf and work in the same encounter. It cannot

-14-

be said, however, adjacent comments about golf and an ACASS evaluation in a single email dispatched thirteen months after-the-fact infer guilt any more strongly than innocence. As a consequence, I am of the firm belief we have a duty and obligation to direct an acquittal herein.

       I respectfully dissent.

_____